Yury **MILOSLAVSKY**, Tatyana **Miloslavsky**, Plaintiffs,

v.

**AES ENGINEERING SOCIETY, INC. and the City of New York,** Defendants.

**No. 91 Civ. 6042 (RWS).**

United States District Court, S.D. New York.

Dec. 10, 1992.

Yury Miloslavsky, Tatyana Miloslavsky, pro se.

O. Peter Sherwood, Corp. Counsel of the City of New York, for defendant The City of New York; Norma Kerlin, Asst. Corp. Counsel, of counsel.

## OPINION

SWEET, District Judge.

Defendant, the City of New York ("The City") has moved under Rule 56, Fed.R.Civ. P., for summary judgment to dismiss the § 1983 complaint of plaintiffs Yury and Tatyana Miloslavsky (the "Miloslavskys"). Upon the facts and conclusions set forth below, the motion is granted, and the complaint is dismissed.

*Prior Proceedings*

The complaint was filed September 9, 1991 by the Miloslavskys *pro se* against the City and the Audio Engineering Society ("AES") following the dismissal by the Honorable Robert P. Patterson, on August

27, 1991, of an earlier action against AES for lack of jurisdiction, 770 F.Supp. 224. A similar result was obtained by an order of this court on December 23, 1991.

Discovery was concluded on May 4, 1992. The instant motion was filed on July 14, 1992 and considered fully submitted on July 21, 1992.

*The Facts*

The Miloslavskys were members of the AES, a New York Not–For–Profit corporation, until their expulsion from AES on June 28, 1990. On January 21, 1991, John Jacob Rieck, Jr., Esq. ("Rieck"), counsel retained by AES, and Charles Scott ("Scott"), a security consultant retained by AES, observed the Miloslavskys enter the lobby of 311 West 34th Street, the site of AES's annual meeting. Rieck informed Yury Miloslavsky that, due to his expulsion, he could not attend the meeting, and he would be arrested for trespass if he did not leave. He refused to leave and became loud and disruptive. Scott telephoned for the police, who arrived shortly thereafter. Upon being apprised of the situation by Rieck and Scott, Officer Charles Edmond ("Edmond") of the New York City Police Department approached Miloslavsky and asked him to leave. Miloslavsky again refused to leave. Edmond asked Scott if he wished to press charges. Upon receiving an answer in the affirmative, Edmond arrested Miloslavsky for trespassing. Miloslavsky was then taken to the station house where he was issued a summons.

Miloslavsky was prosecuted on the charge of trespassing at the Criminal Court of the State of New York, and an order of protection was entered against him on February 20, 1991. The order, part of an agreement consented to by the State and Miloslavsky to adjourn his criminal case in contemplation of dismissal, required Miloslavsky to stay away from all officers, officials, and employees of AES and from all meetings of AES.

*Discussion*

█ In determining whether a genuine issue exists on a Rule 56 motion, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54 (2d Cir.1987). However, the mere existence of some "metaphysical doubt" concerning the facts will not suffice to defeat a summary judgment motion, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), nor will speculation or conjecture as to the true nature of the facts, *see Quarles v. General Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir.1985).

Here the Miloslavskys do not meet the criteria set forth in the Federal Rules and *Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because they do not name or allege any incidents of substantive fact outside of the arrest of Yury Miloslavsky to demonstrate a municipal policy which caused plaintiffs' alleged constitutional violations.

I. No Municipal Policy Or Custom Caused The Alleged Deprivation Of Constitutional Rights

█ In *Monell*, the Supreme Court reviewed the legislative history of 42 U.S.C. § 1983 and concluded that Congress did not intend to impose broad liability on municipalities. *See* 436 U.S. at 690, 98 S.Ct. at 2035; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 822–24, 105 S.Ct. 2427, 2433, 2435–37, 85 L.Ed.2d 791 (1985). It is only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights that it is liable for the injury. *See Monell*, 436 U.S. at 692, 98 S.Ct. at 2036; *Tuttle*, 471 U.S. at 821, 105 S.Ct. at 2435. It follows that, under § 1983, a municipality may not be held liable for the acts of its employees based solely on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

A municipality will be held liable only for constitutional violations caused by its official policies and customs, and it is necessary that the policy or custom be made by one "whose edicts or acts may be said to fairly represent official policy." *Id.*, 436

U.S. at 694, 98 S.Ct. at 2037. It is only when municipal officers who have "final policy making authority" make decisions in a single incident that these actions subject city government to § 1983 liability. *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Furthermore, to establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Monell*, 436 U.S. at 692, 98 S.Ct. at 2036. The Miloslavskys have not alleged that any municipal officer or policy-maker exercised or encouraged a policy or otherwise intentionally or deliberately deprived them of a constitutional right, nor have they named any municipal officers or agencies in their complaint.

A review of the municipal "policies" alleged in this case illustrates the conclusory and speculative nature of the allegations. In their complaint, plaintiffs alleged that the City of New York:

> ha[s] been directly involved in crimes, violations (deprivations of fundamental civil rights, etc.), frauds & criminal conspiracies with defendants [AES] ... It is clear that City has spread shocking-typical red or brown fascist "justice" without any exaggeration.

Def. City of New York's Ex. 7, ¶ 8. Such statements cannot serve as a basis for an imposition of municipal liability.

Other than the allegedly false arrest of Yury Miloslavsky on January 21, 1991, the Miloslavskys fail to set forth any specific incidents to satisfy their obligation to demonstrate a municipal policy.

## II. No Claim Of False Arrest Or Malicious Prosecution Has Been Established

■ It is well-settled that in an action under 42 U.S.C. § 1983, where probable cause is shown to have existed for a challenged arrest, a law officer cannot be found to have violated the arrestee's constitutional rights as a consequence of that arrest. *See Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). This conclusion follows from the fact that, under New York law, "probable cause serves as a complete defense to the charges of false arrest and malicious prosecution." *Graebe v. Falcetta*, 726 F.Supp. 36, 38 (E.D.N.Y.1989). *See Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985); *Feinberg v. Saks & Co.*, 83 A.D.2d 952, 443 N.Y.S.2d 26 (1981), *modified on other grounds*, 56 N.Y.2d 206, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (1982); *see also Coffey v. Wheatland*, 135 A.D.2d 1125, 523 N.Y.S.2d 267, 269 (4th Dep't 1987) ("lack of probable cause is a necessary element of plaintiff's cause of action for false arrest and imprisonment").

In determining whether probable cause existed for these purposes, the Supreme Court has held that:

> Probable cause to arrest depends upon whether, at the moment the arrest was made the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.

*Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972) (citation and internal quotations omitted). The validity of the arrest does not turn on an ultimate finding of guilt or innocence. *See Winfield v. United States*, 430 F.Supp. 912, 914 (S.D.N.Y.1977) (citing *Pierson*, 386 U.S. at 555, 87 S.Ct. at 1218).

■ To find that probable cause for an arrest existed, it is not necessary to show evidence "beyond a reasonable doubt," the standard required for criminal conviction. *See United States v. Pantoja–Soto*, 739 F.2d 1520, 1523 (11th Cir.1984), *cert. denied*, 470 U.S. 1008, 105 S.Ct. 1369, 84 L.Ed.2d 389 (1985). Nor do police officers need to demonstrate that it is more probable than not an offense has been committed to make a *prima facie* showing of criminal activity. *See United States v. Ginsberg*, 758 F.2d 823 (2d Cir.1985). Instead, "[t]he standard of probable cause requires only the probability of criminal activity." *Lindsey v. Loughlin*, 616 F.Supp. 449, 452 (E.D.N.Y.1985) (citing *Zurcher v. Stanford*

*Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)).

■ Moreover, it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth. *See Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968). The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed. *See Adams,* 407 U.S. at 146–47, 92 S.Ct. at 1923–24.

■ In making the determination that probable cause existed to arrest Yury Miloslavsky on this charge, Edmond relied on the complaint, the positive identification of Miloslavsky by agents of the AES as being the trespasser referred to in the complaint, and the disruptive behavior exhibited by Miloslavsky. Edmond's conclusion that an offense had been committed by this plaintiff and that probable cause therefore existed to justify his arrest was objectively reasonable. Accordingly, a false arrest claim by Miloslavsky is untenable.

■ Moreover, Edmond would also be protected by qualified immunity, an affirmative defense that shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate another's constitutional rights of which a reasonable person would have known. In cases of alleged false arrest, objective reasonableness does not turn on whether probable cause in fact existed. *See Martin v. Malhoyt,* 830 F.2d 237, 263 (D.C.Cir.1987). Objective reasonableness can exist if it is shown "either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (citing *Mal-*

*ley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Having spoken to the crime victim/complainant and having observed Miloslavsky's conduct, Edmond had sufficient grounds to reasonably believe that he had probable cause to arrest Miloslavsky.

■ Further, a § 1983 claim for deprivation of civil rights through malicious prosecution cannot be stated without alleging and proving that the prosecution terminated in some manner indicating that the claimant was not guilty of the offense charged. *See Roesch v. Otarola,* 980 F.2d 850, 852–853 (2d Cir.1992); *Singleton v. City of New York,* 632 F.2d 185, 194–95 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).[1] An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt. *See id.* at 193. An adjournment in contemplation of dismissal therefore does not constitute a termination in a complainant's favor. As the Second Circuit has recently noted,

> [a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claims.

*Roesch,* 980 F.2d at 853. The Miloslavskys fail to meet the essence of a § 1983 malicious prosecution claim and cannot maintain it.

In *Roesch,* the Second Circuit explicitly extended the holding in *Singleton* regarding malicious prosecution to include § 1983 actions sounding in false arrest and false imprisonment. *See id.* at 854. Thus, an adjournment in contemplation of dismissal does not constitute a termination in a complainant's favor for the purposes of a § 1983 false arrest claim. From this prop-

---

**1.** To recover on a malicious prosecution claim under New York law, a plaintiff must prove four elements:

(1) that the defendant either commenced or continued a criminal proceeding against plaintiff; (2) that the criminal proceeding ter-

minated in plaintiff's favor; (3) that there was no probable cause for the criminal proceedings; and (4) that the criminal proceeding was instituted in actual malice.

*Graebe,* 726 F.Supp. at 38 (citing *Russo v. State of New York,* 672 F.2d 1014, 1019 (2d Cir.1982)).

osition it follows that, in addition to the "probable cause" and "qualified immunity" reasons stated above, the Miloslavskys' § 1983 false arrest claim fails along with and for the same reasons as does their malicious prosecution claim.

*Conclusion*

Upon the facts and conclusions stated above, summary judgment dismissing the complaint is granted.

It is so ordered.