Kenneth C. HAHN and Ellen Hahn, Plaintiffs,

v.

COUNTY OF OTSEGO, Otsego County Sheriff's Dep't, Otsego County Sheriff Martin A. Ralph, "John Doe" and "John Roe", the names "John Doe" and "John Roe", being fictitious and being intended to represent officers and individuals whose identities are unknown at this time but who were officers, agents or employees of the defendants, John E. Kurdziolek, Cooperstown Assembly of God Church, and the New York District of the Assemblies of God Church, Defendants.

No. 92–CV–337.

United States District Court, N.D. New York.

May 6, 1993.

John P. Speer, Little Falls, NY, for plaintiffs.

James E. Konstanty, Otsego County Atty., Oneonta, NY, for defendants Otsego County, Otsego County Sheriff's Dept. and Sheriff Martin A. Ralph.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY (James A. O'Shea, of counsel), for defendants John E. Kurdziolek, Cooperstown Assembly of God Church, and NY Dist. of Assemblies of God Church.

### MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

Presently before this court is a motion for summary judgment to dismiss the complaint by defendants County of Otsego, Otsego County Sheriff's Department, Otsego County Sheriff Martin A. Ralph ("Otsego County defendants"). There is also before this court a cross-motion made by defendants John E. Kurdziolek ("Rev. Kurdziolek"), Cooperstown Assembly of God Church, and the New York

District of the Assemblies of God Church ("Church defendants"), to dismiss the three causes of action against them.

## FACTS

The plaintiffs, Kenneth Hahn and Ellen Hahn, husband and wife, prior to July 1990, were members in good standing of the Cooperstown Assembly of God Church ("Church"), Town of Otsego, Otsego County, New York. Plaintiff, Kenneth Hahn, was the treasurer of the Church. In February 1990, Rev. Kurdziolek became pastor of the Church. Plaintiffs contend that as pastor of the Church, Rev. Kurdziolek engaged in debatable behavior in his operation of the Church. He alleges that after he began to question Rev. Kurdziolek about his conduct, "the defendant set out [on] a deliberate and planned course of action to publicly humiliate, shame and embarrass both myself and my wife which ultimately resulted in the wrongful termination of our membership in that church." *See Affidavit of Kenneth C. Hahn,* at ¶ 4.

On February 10, 1991, plaintiffs attended a Sunday morning service at the Church with the intentions of addressing the congregation about the alleged wrongful conduct of Rev. Kurdziolek.[1] While attending the service, plaintiffs claim that they conducted themselves in an orderly manner, simply requesting permission to address the congregation. Their request was rejected by Rev. Kurdziolek. Plaintiffs maintain that at no time did they disrupt the service.

The Church defendants allege that plaintiffs were terminated as members of the Church due to a dispute which arose in February 1990. Approximately one year later, on February 10, 1991, plaintiffs attended the Sunday service, and just when Rev. Kurdziolek began his sermon, they became loud and disruptive. Plaintiffs were then asked to leave the Church but refused to do so. Because of this disruption, Rev. Kurdziolek canceled the morning service. Defendants allege that plaintiffs told the Church members that they would return each Sunday until they were allowed to speak. After the plaintiffs left, the Church contacted the Otsego Sheriff's Department to complain of plaintiffs' conduct. Shortly thereafter Deputy Sheriff Glenn Davis ("Davis") arrived at the Church and, after a discussion, James A. Ainslie ("Ainslie"), secretary of the Church, advised Davis that the Church desired to prosecute plaintiffs for the misdemeanor crime of disrupting or disturbing a religious service.[2]

On February 11, 1991, after obtaining an executed criminal complaint from Ainslie, Davis proceeded to the residence of the plaintiffs and escorted them back to the Sheriff's Department.[3] Plaintiffs were then formally charged with aggravated disorderly conduct. Plaintiffs contend that at no time were they allowed to give an account of their side of the events which occurred on February 10, 1991. Plaintiffs then appeared before Town Justice James F. Wolff and pled not guilty to aggravated disorderly conduct. Justice Wolff also issued a Temporary Order of Protection, preventing plaintiffs from any contact whatsoever with Rev. Kurdziolek and the governing board of the Church. Subsequently, in May 1991, the charges against plaintiffs were dismissed on the motion of the District Attorney, in the interest of justice, upon their representation that they would refrain from any such conduct in the future.[4]

---

1. Plaintiffs contend that they informed Rev. Kurdziolek of their intentions by letter, but never received a response. They, therefore, assumed that they were not forbidden from attending the morning service.

2. "A person is guilty of aggravated disorderly conduct, who makes unreasonable noise or disturbance while at a lawfully assembled religious service . . . with the intent to cause annoyance or alarm or recklessly creating a risk thereof." N.Y.Penal Law § 240.21 (McKinney 1989).

3. There is some question here as to whether plaintiffs voluntarily drove to the Sheriff's Department, or whether they were not given any choice but to accompany Deputy Sheriff Davis. For the purpose of defendants' motion, it will be assumed as true that plaintiffs were arrested at their home.

4. Initially, plaintiffs objected to the dismissal of the charges because they felt that they had done nothing wrong and wished to publicly clear their name. They also wanted to "clear the way for a subsequent lawsuit against the Assemblies of God."

Plaintiffs thereafter filed the instant lawsuit claiming malicious prosecution and abuse of process against Rev. Kurdziolek and the Church; negligent supervision and oversight of Rev. Kurdziolek and the Church by the NY District of the Assemblies of God; and pursuant to 42 U.S.C. § 1983, violations of the Fourth and Fourteenth Amendments by the Otsego County defendants.

## MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Lang v. Retirement Living Pub. Company,* 949 F.2d 576, 580 (2d Cir. 1991). Therefore, "summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475

U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* at 248, 106 S.Ct. at 2510, "such is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Insurance Company,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* — U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). The judge's role is "to determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510.

## DISCUSSION

The Otsego County defendants submit that there are no triable issues of fact existing to support plaintiff's complaint. Namely, they claim that the undisputed facts reveal that Davis had reasonable cause to prepare the misdemeanor complaint charging plaintiffs with disrupting or disturbing a religious service. Defendants state that since probable cause existed, there can be no violation of the Fourth Amendment. *United States v. Place,* 660 F.2d 44, 47 (2d Cir.1981) (Probable cause exists if the circumstances known to the police officer are sufficient "to lead a reasonable and prudent person to believe, not merely suspect, that a crime has been or is being committed."), *aff'd,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

Plaintiffs object to the motion on the ground that whether or not probable cause existed at the time of their arrest is a question of fact for the jury. *Lewis v. Kendrick,* 944 F.2d 949, 952 (1st Cir.1991). In *Kendrick,* the First Circuit Court of Appeals found that statements made by the alleged victim did not automatically establish the requisite probable cause to arrest someone. Plaintiffs maintain that they had no chance to tell the arresting deputy their side of the events which took place on February 10, 1991, and they are entitled to discover the facts and circumstance which led Davis to arrest them.

■ Plaintiffs correctly observed that a police officer in New York State may not arrest a person without an arrest warrant unless he has reasonable cause to believe that a crime has been committed, and that the person in question has committed that crime. N.Y.Crim.Proc.Law § 140.10(1)(b) (McKinney 1992). Reasonable cause is defined substantially the same as probable cause under the Fourth Amendment. *Raysor v. Port Authority of New York & New Jersey,* 768 F.2d 34, 39–40 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986); *People v. Fields,* 50 A.D.2d 870, 870, 376 N.Y.S.2d 943, 945 (2d Dep't 1975). Thus, "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Furthermore, a probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment. *Miloslavsky v. AES Engineering Soc., Inc.,* 808 F.Supp. 351, 354 (S.D.N.Y. 1992). In fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination. *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Finally, "[f]or the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure." *Warren v. Dwyer,* 906 F.2d 70, 73, (2d Cir.1990) (*citing Brinegar v. United States,* 338 U.S. 160, 170–78, 69 S.Ct. 1302, 1308–12, 93 L.Ed. 1879 (1949)).

Turning to the facts before the court, Davis had the following information on which to make the arrest, as provided by members of the Church. First, Ainslie and other members of the Church and its Board of Directors informed Davis that the plaintiffs, whom the members of the Church knew from their past membership, had became "loud and disruptive" during Rev. Kurdziolek's ser-

mon. Second, that members of the Church requested plaintiffs to leave the service, but they refused. Third, that due to the disruption, Rev. Kurdziolek canceled the morning service. Finally, that plaintiffs informed the members of the Church that they would return each Sunday and conduct themselves in the same manner until they were allowed to address the congregation. Davis then obtained a sworn criminal complaint from Ainslie attesting, under penalty of perjury punishable as a Class A misdemeanor, that plaintiffs had, in fact, disrupted a religious service. After examination of all the preceding facts, this court determines that Davis acted with probable cause when he arrested the plaintiffs. *Miloslavsky,* 808 F.Supp. at 355.

Here, Davis had the eyewitness account of several members of the Church recounting the conduct of the plaintiffs at the morning service. The plaintiffs were known to the members of the Church. *Kruppenbacher v. Mazzeo,* 744 F.Supp. 402, 406 (N.D.N.Y.1990) ("In many cases where the victim has made a 'positive identification,' the circumstances may be such as to warrant a court's finding of reasonable cause as a matter of law.") (*quoting Collom v. Incorporated Village of Freeport, New York,* 691 F.Supp. 637, 640 (E.D.N.Y.1988)). Furthermore, Davis had the sworn criminal complaint of Ainslie. Indeed, "[o]fficers have probable cause to arrest if they receive 'information from some person—normally the putative victim or eyewitness—who seems reasonable to believe is telling the truth.'" *Thomas v. Culberg,* 741 F.Supp. 77, 80 (S.D.N.Y.1990) (*quoting Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968)); *Miloslavsky,* 808 F.Supp. at 355; *but see Kendrick,* 944 F.2d at 952. In addition, Davis was entitled to rely on the veracity of the Church members. *Kruppenbacher,* 744 F.Supp. at 406.

■ Plaintiffs also argue that summary judgment should be denied because Davis made no further investigation beyond talking with the Church members, nor did he ask plaintiffs for their side of the story before making the arrest. However, "the existence of competing accounts cannot of itself render the issue of probable cause a jury question." *Collom,* 691 F.Supp. at 640. Moreover, "The

question is not what might have been developed from further investigation, but whether the facts known when, and on which, defendant acted were sufficient to constitute probable cause." *Fazzino v. Chiu,* 771 F.Supp. 518, 521 (D.Conn.1991). In this instance, Davis was entitled to rely on the information supplied to him by the Church members as to the events which took place on the morning of his investigation. Therefore, this court finds as a matter of law that Davis had probable cause to arrest plaintiffs on the charge of aggravated disorderly conduct.[5]

 Finally, since the court has determined that Davis had probable cause to arrest plaintiffs, the court also dismisses their claim that the individual officers acted pursuant to a custom, practice or policy of Otsego County that deprived them of their constitutional rights. In order for plaintiffs to hold a municipality liable, they must prove that a governmental custom, practice or policy actually caused the deprivation of their constitutional rights. *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 690–93, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Where, as here, a police officer arrests someone with probable cause, there has been no deprivation of a constitutional right, and therefore no liability attaches to the municipality. *City of Los Angeles v. Heller,* 475 U.S. 796, 798–99, 106 S.Ct. 1571, 1572–73, 89 L.Ed.2d 806 (1986); *Dodd v. City of Norwich,* 827 F.2d 1, 5 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988).

The Church defendants move this court to dismiss all causes of action against them primarily on the ground that if the court grants County defendants' motion, then only three **state** causes of action exist, and the court should therefore decline to exercise pendent jurisdiction. *Powell v. Gardner,* 891 F.2d 1039, 1046–47 (2d Cir. 1989) ("[I]n light of the proper dismissal of the § 1983 claims against the County, the district court should have declined to exercise pendent jurisdiction over [plaintiffs'] state-law claims against the County.") The court agrees that since there remains only three causes of action pursuant to state law, plaintiffs' complaint against the Church defendants is dismissed. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Inasmuch as plaintiffs' malicious prosecution claim against the Church defendants also states a Section 1983 cause of action, it is dismissed because " '[a] dismissal 'in the interest of justice' is neither an acquittal of the charges nor any determination of the merits.' Consequently, as a matter of law, it cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Hygh v. Jacobs,* 961 F.2d 359, 367–68 (2d Cir.1992) (citations omitted).

Accordingly, it is ORDERED that:

1. Defendant County of Otsego, Otsego County Sheriff's Department, and Otsego County Sheriff Martin A. Ralph's motion to dismiss is granted;

2. Defendant John Kurdziolek, Cooperstown Assembly of God Church, and the New York District of the Assemblies of God Church's cross-motion to dismiss is granted;

3. Plaintiffs' complaint is dismissed in its entirety; and

4. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

5. The County defendants did not move to dismiss based on qualified immunity, and the court has not considered that issue. Even so, the individual county defendants would be shielded from liability upon a showing "either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). Since it is the determination of the court that Davis acted on probable cause, it was also reasonable for him to believe that he had probable cause to arrest plaintiffs. *See Warren,* 906 F.2d at 75.