Derrick DRUMMOND, Plaintiff,

v.

Detective David CASTRO (shield No. 769), Detective John Burgos (shield No. unknown) both of whom being employed by the City of New York and the New York City Police Department in their official and Individual capacity, who were Involved in the arrest and Prosecution of plaintiff as set forth herein, The City of New York, Defendants.

No. 00 Civ. 0785(LMM)(KNF).

United States District Court, S.D. New York.

Nov. 26, 2007.

Steve James Marchelos, Mineola, NY, for Plaintiff.

Kathleen Alicia Donohue, Salon Marrow Dyckman & Newman LLP, Seth D. Eichenholtz, City of New York Law Department, Sabrina Melissa Tann, New York City Law Depart., Office of the Corporation Counsel, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

McKENNA, District Judge.

Plaintiff Derrick Drummond brings the present action pursuant to 42 U.S.C. § 1983, claiming that his rights under the Fourth and Fourteenth Amendments of the Constitution were violated, and specifically alleging claims of false arrest, malicious prosecution, and excessive force against Defendants David Castro, John Bourges (appearing sometimes as "Bur-

gos"), and the City of New York. Here Plaintiff moves to compel Defendants to produce the identity of the witness on the basis of whose testimony Plaintiff was arrested and prosecuted for the murder of Hewley Steele. Defendants move for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. Background

### a. Factual Background

On June 17, 1996, detectives from the 33rd Precinct of the New York City Police Department were called to 175th Street and Audobon in New York City to investigate the shooting death of Hewley Steele and the attempted murder of a surviving eyewitness. (Defendants' Local Rule 56.1 Statement ("Defs.' 56.1 Stmt.") ¶ 1.) Defendant Detective David Castro was assigned to be the lead detective, and Defendant Detective John Bourges "assisted fully" in the investigation. (Defs.' 56.1 Stmt. ¶ 2; Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") ¶ 48.)

Upon reaching the crime scene, the detectives found a blood trail leading from the sidewalk in front of 534 West 175th Street into the basement apartment, where they found the body of Hewley Steele. (Defs.' 56.1 Stmt. ¶ 3.) The surviving victim, whose identity remains undisclosed, had been shot in the head, and was taken by Emergency Medical Services to Columbia Presbyterian Hospital prior to the detectives' arrival at the crime scene. (*Id.* at ¶ 4 and ¶ 4, fn. 1.)

According to Detective Castro, police efforts following the shooting to canvass the neighborhood for additional witnesses to the crime failed to produce any witnesses or other material evidence. (Pl.'s 56.1 Stmt. ¶¶ 52–53.) Police were also unable to find any fingerprints at the crime scene. (*Id.* at ¶ 54.)

According to the "DD5" police reports completed by Detectives Bourges and Cas-

tro, Detectives Bourges and Castro went to the hospital to speak with the surviving witness after leaving the crime scene on June 17, 1996. (Pl.'s 56.1 Stmt. Exhibit B at 000031; Defs.' 56.1 Stmt. ¶ 5.) At the hospital, the surviving witness told Detective Bourges that while he was at Hewley Steele's house in the process of cutting Mr. Steele's hair, around 5:45 that evening, a black man in his mid-thirties with a beard, and wearing a black sweat suit, entered the apartment. (Pl.'s 56.1 Stmt. Exhibit B at 000031; Defs.' 56.1 Stmt. ¶ 7.) The surviving witness told Detective Bourges that he had noticed Mr. Steele's reaction and, in response, had turned and seen the man holding a gun. (Pl.'s 56.1 Stmt. Exhibit B at 000031; Defs.' 56.1 Stmt. ¶ 8.) The witness told the detectives that he could identify the shooter and that Mr. Steele had called out to the shooter by name, although he could not remember the name at that time. (Pl.'s 56.1 Stmt. Exhibit B at 000031; Defs.' 56.1 Stmt. ¶ 9.)

On June 26, 1996, Detective Castro returned to the hospital to speak with the surviving witness, who repeated his previous account of the events of June 17. (Defs.' 56.1 Stmt. ¶ 10.) The witness additionally told Detective Castro that Mr. Steele had seen the shooter through the window as he approached the door and had said "that look like Derick." (Defs.' 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 63.) The witness also stated that Mr. Steele had greeted the man at the door, calling him "Derick." (Defs.' 56.1 Stmt. ¶ 12.) The attacker shot Mr. Steele, and the witness struggled with the attacker and then was struck with the gun and shot in the face by the attacker, according to the witness's June 26 statement. (Id. at ¶ 13.)

The surviving witness made another statement on October 26, 1996, in which he told police that it was he who let the perpetrator into the apartment, not Hewley Steele. (Pl.'s 56.1 Stmt. ¶ 67.)

During the investigation, police found a personal telephone book in Mr. Steele's apartment. (Defs.' 56.1 Stmt. ¶ 14; Pl.'s 56.1 Stmt. ¶ 65.) Detective Castro searched the book for names similar to "Derick" and called a number listed as belonging to a person named "Derrick." (Defs.' 56.1 Stmt. ¶¶ 15–16.) An investigation determined that the number currently belonged to someone with a name similar to "Derick" and that the previous owner of the telephone number was Plaintiff Derrick Drummond. (Id. at ¶¶ 17–18; Pl.'s 56.1 Stmt. ¶ 65.)

Detectives Bourges and Castro contacted Assistant District Attorney ("ADA") Ann Donnelly to obtain a subpoena for copies of the Department of Motor Vehicles ("DMV") License photos for the two individuals who had been assigned to the telephone number found in Hewley Steele's address book, including Plaintiff Derrick Drummond. (Defs.' 56.1 Stmt. ¶ 19.) ADA Donnelly provided a subpoena to Detective Bourges, who obtained DMV licenses for Plaintiff and the other individual. (Id. at ¶ 20.) Detective Bourges created two different photo arrays using the DMV license photos, placing the two individuals assigned to the telephone number found in Mr. Steele's address book in separate arrays. (Id. at ¶ 22.) The witness picked out Plaintiff Derrick Drummond's picture, asserting that he was the shooter. (Id. at ¶ 23.) The witness had previously gone through thousands of photos from police photo books, and had never identified Plaintiff or anyone else as the shooter. (Id. at ¶ 21; Pl.'s 56.1 Stmt. ¶ 66; Deposition of John Bourges, pp. 59–61.)[1]

1. In his deposition testimony, Defendant Detective John Bourges fails to specify whether or not Plaintiff Derrick Drummond's photo was included in the "thousands" of photos viewed by the surviving witness early in the investigation, prior to the witness's viewing of

On February 3, 1997, Plaintiff Derrick Drummond was arrested and brought to the 33rd Precinct. (Defs.' 56.1 Stmt. ¶ 24.) When questioned at the time of his arrest, Plaintiff admitted to knowing Hewley Steele, though he said he had not seen Mr. Steele since 1992. (*Id.* ¶ 25; Pl.'s 56.1 Stmt. ¶ 34.) The surviving witness picked Plaintiff out of a lineup and identified him as the shooter. (Defs.' 56.1 Stmt. ¶ 26.)

The District Attorney's office filed a criminal complaint charging Plaintiff with murder in the 2nd degree, attempted murder in the 2nd degree, assault in the 1st degree, and criminal possession of a weapon in the 2nd degree. (*Id.* at ¶ 27.) After Plaintiff was arraigned, he waived his rights under CPL 180.80 to have his case presented to a Grand Jury within five days of arraignment, and the District Attorney's office did not seek a Grand Jury indictment. (*Id.* at ¶ 28.)

While in custody, Plaintiff told police that on the day of the shooting, he had worked from 7:30 a.m. to 5:30 p.m. (Pl.'s 56.1 Stmt. ¶ 33.) In a later meeting, after Plaintiff's release, in which Plaintiff was accompanied by counsel, he told ADA John W. Carter and Defendant Detective Bourges that after leaving work at 5:30 p.m. on June 17, 1996, he had had dinner with two friends in Mount Vernon. (*Id.* at ¶¶ 46–47.) Plaintiff's family posted bail in the amount of $50,000 on February 19, and Plaintiff was released. (*Id.* at ¶ 40.) Prior to Plaintiff's release, Detectives Bourges and Castro conducted a search of Plaintiff's apartment and car, but failed to find a gun or other physical evidence linking Plaintiff to the crime. (*Id.* at ¶ 41–42.)

The police investigation revealed that the surviving witness was the nephew of the deceased victim, Hewley Steele. (*Id.* at ¶ 58.) According to Defendant Detec-

tive Castro, the surviving witness was at one time a suspect in the murder of Hewley Steele. (*Id.* at ¶ 59.) Detective Castro also testified in his deposition that the surviving witness had previously been arrested for assault in the jurisdiction of the 76th Precinct in Brooklyn, though Detective Castro did not know the exact circumstances surrounding the arrest. (*Id.* at ¶ 60.)

Plaintiff appeared in court multiple times between his initial arrest on February 3, 1997 and the dismissal of all charges against him on March 3, 1998, during which time the District Attorney's office continued to investigate the crime. (*Id.* at ¶ 43.)

At the time of his arrest, Plaintiff was employed by Verizon Communications as a telephone technician, and had never been arrested or convicted of a crime. (*Id.* at ¶¶ 30–31.)

**b. Procedural Background**

Plaintiff filed the present action in this court on February 3, 2000. Both parties engaged in substantial discovery before this Court and before Magistrate Judge Kevin Nathaniel Fox.

Plaintiff filed the Motion to Compel Discovery pursuant to FRCP 37(a) on March 21, 2005, and Defendants filed their Motion for Summary Judgment on June 28, 2005.

**II. Plaintiff's Motion to Compel**

Plaintiff here moves to compel Defendants to produce the name, address, and telephone number of the surviving witness to enable Plaintiff to depose the witness. Plaintiff argues that, as the sole source of direct evidence linking Plaintiff to the crime at issue, the surviving witness must be deposed in order to determine whether

---

the photo arrays containing the photo of Derrick Drummond obtained from the DMV. Nei-

ther Plaintiff nor Defendants address this question in their papers.

probable cause existed to arrest and prosecute Plaintiff, and, in the absence of probable cause, whether Defendants are entitled to qualified immunity from liability.

Defendants assert probable cause as an affirmative defense to Plaintiff's claims for false arrest and malicious prosecution. Plaintiff asserts that Defendants are unable to establish the existence of probable cause in the absence of testimony from the surviving witness, and that Plaintiff requires deposition testimony from the surviving witness to successfully rebut Defendants' probable cause defense.

### a. Probable Cause

### i. Probable Cause Standard

■ Probable cause is established "when the arresting officer has 'knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Singer v. Fulton County Sheriff,* 63 F.3d 110 (2d Cir.1995) (quoting *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (internal citations omitted)). Probable cause may exist where an officer has mistaken information, so long as it was reasonable for him to rely on the information. *See Mistretta v. Prokesch,* 5 F.Supp.2d 128, 133 (E.D.N.Y.1998)

■ Where there is no dispute regarding the pertinent knowledge of the arresting officer, probable cause may be determined as a matter of law. *Mistretta,* 5 F.Supp.2d at 133 (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). Furthermore, even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events establishes the existence of probable cause to arrest. *Id.*

Courts have repeatedly found that there is a presumption of probable cause to arrest when police are acting on the testimony of a putative victim or eyewitness. *Mistretta,* 5 F.Supp.2d at 133 (citing *Mi-*

*loslavsky v. AES Eng'g Soc'y,* 808 F.Supp. 351, 355 (S.D.N.Y.1992)) ("The veracity of citizen complaints [sic] who are the victims of the very crime they report to the police is assumed."), *aff'd,* 993 F.2d 1534 (2d Cir. 1993), cert, denied, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993); *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) ("[A]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint ... charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.") In *Gisondi v. Town of Harrison,* 72 N.Y.2d 280, 284, 532 N.Y.S.2d 234, 528 N.E.2d 157 (1988), a decision affirming an appellate reversal of a plaintiff's jury verdict on false arrest and malicious prosecution claims resulting from a victim's identification of plaintiff as the man who raped her, the New York Court of Appeals held that the victim's identification of the purported perpetrator created a presumption of probable cause that was not overcome by the fact that the Grand Jury later voted to dismiss the charges. In *Garofalo v. City of New York,* 1996 WL 94806, *2 (S.D.N.Y.), the court found as a matter of law that probable cause to arrest had existed where a putative victim had been prepared to swear to allegations that plaintiffs had violated a provision of the New York Penal Law, and noted that it would be "unwise for the courts to engage in a hind-sight review to decide whether a police officer should have credited the story of a person who was willing to swear that she was the victim of a crime."

■ Once they have established the existence of probable cause to arrest, police officers do not have to endeavor to negate it. *Carson v. Lewis,* 35 F.Supp.2d 250, 261 (E.D.N.Y.1999) (citing *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689,

61 L.Ed.2d 433 (1979)). " 'Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to ... determine guilt, through a weighing of the evidence.' " *Eisenberg v. Dist. Attorney of King,* 1996 WL 406542, at *4 (E.D.N.Y. 1996) (quoting *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989)) (granting summary judgment on a false arrest claim even where the putative sexual abuse victim was known to have made an unsubstantiated complaint of sexual abuse in the past). *See also Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (holding that once a police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest).

### ii. Evidence of Probable Cause

Defendants offer evidence to support their finding of probable cause to arrest and prosecute Plaintiff in the form of deposition testimony from Defendant Detectives Bourges and Castro, Assistant District Attorneys Donnelly and Carter and DD5 police reports, which contain recorded observations and witness statements from various stages of the investigation. Plaintiff argues that the DD5 reports are inadmissible as hearsay, and should therefore not be considered as evidence in the court's examination of probable cause for the purposes of Plaintiff's motion to compel and Defendants' motion for summary judgment.

■ Defendants offer the DD5 reports in support of their contention that probable cause existed for the arrest and subsequent prosecution of Plaintiff. The relevant inquiry for determining whether probable cause existed is whether the knowledge available to Defendants at the time of the arrest and prosecution provided a basis for a reasonable person in Defendants' position to believe an offense had been committed. As noted above, this belief may be reasonable even if the information relied upon is false, so long as the source is reasonably credible. *See Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir.1998) (" '[S]o long as a reasonably credible witness or victim informs the police that someone has committed ... a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent.' ") (quoting *Tangwall v. Stuckey,* 135 F.3d 510, 520 (7th Cir.1998)); *Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 439 (7th Cir.1986) (quoting *Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968)) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth that matters.")

■ When offered for the purpose of establishing Defendants' knowledge at the time of their decisions to arrest and prosecute Plaintiff, the DD5 reports are not hearsay, as they are not offered for the truth of the information they contain, but rather to establish a basis for Defendants' finding of probable cause. The Court finds, therefore, that the DD5 reports may be properly considered as evidence relevant to the probable cause inquiry.

### iii. Probable Cause Discussion

Plaintiff asks that the Court compel Defendants to disclose the identity of the surviving witness, arguing that this witness's testimony is necessary to establish the reasonableness of Defendants' reliance on the witness's testimony, thereby determining whether or not probable cause existed to arrest and prosecute Plaintiff.

Plaintiff asserts that several facts from the record demonstrate the witness's unreliability, and that Defendants cannot establish the existence of an objective reasonable basis for believing that Plaintiff committed the crime, absent direct testimony from the surviving witness.

Plaintiff points to differences in the surviving witness's statements regarding the events surrounding the crime and the identity of the shooter, arguing that these discrepancies undermine the witness's objective reliability. In his statement to police from the hospital on June 17, 1996, the day of the shooting, the witness told police that he did not know the identity of the shooter, and that he remembered Hewley Steele calling the shooter by name but could not remember the name. In his statement on June 29, 1996, the witness told police that he recalled Steele looking through the window and saying "that look like Derick." In a statement on October 26, 1996, the witness told police that it was he rather than Hewley Steele that had let the shooter into the apartment and described the shooter as "going off," a description not used in previous statements. (Pl.'s 56.1 Stmt. ¶ 67.)

■ The Court disagrees with Plaintiff's contention that the surviving witness's statements contain inconsistencies sufficient to raise material concerns about his credibility. The New York Court of Appeals noted in *Gisondi v. Town of Harrison*:

> In any investigation the police are likely to encounter discrepancies ... These matters may impair their ability to prove guilt beyond a reasonable doubt at trial, but they generally have little bearing at preliminary stages where the only relevant concern is whether there is sufficient evidence to show probable cause to believe the defendant committed the crime.

72 N.Y.2d 280, 285, 532 N.Y.S.2d 234, 528 N.E.2d 157 (1988). Likewise, the Second Circuit has rejected the argument that conflicting accounts from an alleged victim and an arrestee should have prompted a more thorough investigation by police. "[A] finding of probable cause is not foreclosed where a police officer is presented with different stories from an alleged victim and an arrestee." *Oblio v. CUNY*, 2003 U.S. Dist. LEXIS 2886 at *26–*27 (E.D.N.Y.2003).

In the instant case, the witness maintained in all his statements that he did not know the shooter, and his initial failure to remember details that he recalled in later statements, such as the shooter's name, is not implausible, particularly in light of the fact that he was shot in the head during the crime. Further, the reliability of the witness's identification of Plaintiff in the photo array and lineup is enhanced by the fact that the police located Plaintiff by tracing a telephone number found in Hewley Steele's address book under the name "Derrick." Police do not cite any evidence of a prior relationship between the witness and Plaintiff that would tend to suggest a hidden motive on the part of the witness or cast doubt on the witness's veracity.

■ Plaintiff additionally cites Defendant Detective Castro's deposition testimony that the surviving witness had previously been arrested for assault, and that he had at one time been a suspect in the crime at issue here, arguing that these are factors that call into question the witness's credibility and establish the need for further investigation into the witness's veracity. However, these are not facts that cast substantial doubt on the credibility of the witness's statements with respect to the crime at issue here. Further, after they obtain sufficient evidence to establish the existence of probable cause, police are not obligated to attempt to disprove the exis-

tence of any evidence weighing against a finding that the suspect committed a given crime. *See Carson,* 35 F.Supp.2d at 261.

■■■ The Court disagrees with Plaintiff's contention that access to the surviving witness is necessary to establish whether or not the witness was sufficiently reliable to provide police and prosecutors with probable cause to arrest and prosecute. Having established that the surviving witness was apparently a victim of the shooting and that he identified Plaintiff as the shooter through a process that was objectively reasonable and substantiated by his earlier testimony regarding the shooter's name, Defendants have sufficiently established that probable cause existed to arrest and prosecute Plaintiff.

Defendants assert that the surviving witness's continued safety requires that the District Attorney's office maintain the confidentiality of his identity. This consideration, in addition to the finding that a deposition of the surviving witness is unnecessary for a determination that probable cause existed to arrest and prosecute plaintiff, weighs in favor of a decision to deny Plaintiff's motion to compel.

Plaintiff's motion to compel is therefore DENIED.

### III. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's claims under § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the Constitution; specifically for false arrest, malicious prosecution and excessive force.

#### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nabisco, Inc. v. Warner–Lambert Co.,* 220 F.3d 43, 45 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

In weighing a motion for summary judgment, ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). However, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Fed.R.Civ.P. 56) (emphasis omitted). "[C]onclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) (citations omitted).

#### b. False Arrest Claim

■■■ A § 1983 claim for false arrest rests on an individual's Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, and is substantially the same as a claim for false arrest under New York law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). To state a claim for false arrest, a plaintiff must prove that: (1) the

defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Id.*

▊ Regardless of whether the first three prongs are satisfied, the claim for false arrest will fail where defendants establish that probable cause existed, as the existence of probable cause is a complete defense to an action for false arrest. *See Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (citing *Zanghi v. Inc. Vill. of Old Brookville,* 752 F.2d 42, 45 (2d Cir. 1985)). A defendant police officer who arrests a person without a warrant is not liable for false arrest if the officer had reasonable cause to believe that the individual committed an offense. *See Illinois v. Gates,* 462 U.S. 213, 241–46, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

▊ As discussed above, Defendants have provided sufficient evidence to demonstrate the existence of probable cause to arrest Plaintiff, thereby defeating Plaintiff's false arrest claim. Interpreting all ambiguities in the light most favorable to Plaintiff, the Court finds that the undisputed facts provide sufficient grounds for a finding that at the time of Plaintiff's arrest, police possessed sufficient "reasonable trustworthy information ... to warrant a person of reasonable caution in the belief that the offense" had been committed." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) (internal citations omitted).

The DD5 reports and testimony from Defendant Detectives Bourges and Castro establish that grounds for Plaintiff's arrest were provided by several key pieces of evidence: testimony from the surviving witness that Hewley Steele called the shooter "Derick" or something similar; the discovery of a telephone number assigned to "Derrick" in Mr. Steele's address book formerly belonging to Plaintiff; and final-

ly, the surviving witness's identification of Plaintiff in a photo array and lineup. Notwithstanding Plaintiff's arguments of inconsistency in the surviving witness's statements and the possibility that the surviving witness had an arrest record, the record contains no facts that would sufficiently undermine the witness's credibility so as to make it unreasonable for Defendants to rely on the witness's testimony as a basis for deciding to arrest Plaintiff. The possibility that the witness had an arrest record is not directly relevant to the credibility of his testimony respecting the crime at issue here, and the minor discrepancies in the witness's statements do not raise serious doubts as to the reliability of the material facts in his testimony.

The Court finds that Defendants have met their burden of establishing that probable cause existed and that Plaintiff's arrest was therefore privileged. As a result, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim for false arrest.

### c. Malicious Prosecution Claim

▊ To state a claim for malicious prosecution, a plaintiff must show (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995). As with a false arrest claim, the presence of probable cause is a complete defense to an action for malicious prosecution under § 1983 or state law. *See Graebe v. Falcetta,* 726 F.Supp. 36, 38 (E.D.N.Y.1989), *aff'd,* 946 F.2d 883 (2d Cir. 1991).

▊ For malicious prosecution purposes, "the determination of probable cause is assessed in light of the facts

known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Carson v. Lewis*, 35 F.Supp.2d 250, 263 (E.D.N.Y.1999) (citing *Dukes v. City of New York*, 879 F.Supp. 335, 342 (S.D.N.Y.1995)). Further, "a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." *Carson*, 35 F.Supp.2d at 263.

Plaintiff fails to establish the existence of evidence uncovered after the arrest that successfully vitiates probable cause. While he points to his alibi for the evening of the crime and the character reference given by his employer as evidence that should weigh further against a finding of probable cause to prosecute following his arrest, the Court finds that these factors do not suffice to defeat Defendants' showing of probable cause. As discussed above, the surviving witness's identification of Plaintiff established an objectively reasonable basis for a finding of probable cause to arrest and prosecute Plaintiff. While evidence of Plaintiff's character and whereabouts on the night of the crime are certainly factors that would be weighed carefully at trial, they do not undermine the previously established basis for a finding of probable cause to arrest and prosecute Plaintiff.

Plaintiff also cites the prosecutors' failure to seek a grand jury indictment as evidence of a lack of probable cause to prosecute Plaintiff. In fact, the prosecutors' failure to seek a grand jury indictment does not serve as evidence against a finding that probable cause existed to arrest and prosecute Plaintiff; the lack of an indictment merely obligates Defendants to prove the existence of probable cause as an affirmative defense to Plaintiff's claims of false arrest and malicious prosecution. *See Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975) (noting that in cases where an arrest or imprisonment is extrajudicial, the burden is on the defendant to prove the existence of probable cause).

The Court finds that Defendants have successfully met their burden of proving the existence of probable cause to arrest and prosecute Plaintiff.

Defendants' motion for summary judgment is therefore GRANTED with respect to Plaintiff's malicious prosecution claim.

### d. Excessive Force Claim

Plaintiff further asserts a claim that Defendants used excessive force against him in violation of his Fourth Amendment rights. The Supreme Court has held that "claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To determine whether the amount of force used is reasonable, a reviewing court must take into consideration the "totality of the circumstances faced by the officer on the scene," *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir.1995), and assess whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.

To sustain a claim of excessive force, a plaintiff must present sufficient evidence to establish that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Cunningham v. Rodriguez*, 2002 WL 31654960, at *4, 2002 U.S. Dist. LEXIS 22660, at *10–*11 (S.D.N.Y.2002) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d

Cir.1999)). Further, "a de minimis use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir.1993). The court in *Wilder v. Village of Amityville*, 288 F.Supp.2d 341, 344 (E.D.N.Y.2003), granted summary judgment dismissing a claim of excessive force based on allegations of tight handcuffs where the handcuffs resulted in inflammation of the plaintiff's wrists for a period of twenty-four hours but did not require medical attention.

Here, Plaintiff alleges that during his arrest he was handcuffed tightly, but he does not allege any injury from the handcuffing or other circumstances of the arrest. The Court agrees with Defendants' contention that Plaintiff fails to present any evidence apart from the tight handcuffs that would lead a reasonable juror to find that police used excessive force in the course of Plaintiff's arrest. Further, the lack of any injury resulting from the tight handcuffs and the reasonableness of officers' use of handcuffs during the arrest of a murder suspect leads the Court to conclude that Defendants' use of force in this instance fails to violate the Fourth Amendment's reasonableness standard. Defendants' motion for summary judgment is therefore GRANTED as to Plaintiff's excessive force claim.

Defendants' motion for summary judgment is therefore GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is DENIED and Defendants' motion for summary judgment is GRANTED.

SO ORDERED.