Don A. WEINER, Plaintiff,

v.

Dennis McKEEFERY, Raffaele Maietta, Maryann Weiner, The County of Suffolk, and Thomas Spota, Defendants.

No. 11–CV–2254 (JFB)(AKT).

United States District Court, E.D. New York.

Signed March 11, 2015.

Arther V. Graseck, Jr., Oakdale, NY, Frank J. Blangiardo, Cutchogue, NY, for Plaintiff.

Brian C. Mitchell, Suffolk County Department of Law, Hauppague, NY, for Defendants.

Mary Ann Weiner, pro se.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Plaintiff Don A. Weiner ("D. Weiner" or "plaintiff") brings this action against the County of Suffolk ("the County"), Police Officer Dennis McKeefery ("Officer McKeefery"), Police Sergeant Raffaele Maietta ("Sergeant Maietta"), District Attorney Thomas Spota ("Spota"), and Maryann Weiner ("M. Weiner") (collectively, "defendants"). This case stems from plaintiff's April 2, 2009 arrest by Suffolk County Police for allegedly endangering the welfare of a minor in violation of New York State Penal Law Section 260.10.1, and for alleged harassment in the second degree in violation of New York State Penal Law Section 240.26.1. Plaintiff contends that the police lacked probable cause to arrest and prosecute him, and asserts claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution against defendants Officer McKeefery and Sergeant Maietta. Plaintiff brings a pendent claim for malicious prosecution under New York State Law against *pro se* defendant M. Weiner. Plaintiff also asserts a *Monell* claim against the County and a claim against defendant Spota seeking declaratory relief for allegedly failing to properly act upon potentially exculpatory evidence. Suffolk County defendants (Officer McKeefery, Sergeant Maietta, the County, and Spota) and *pro se* defendant, M. Weiner, have separately moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. As set forth in detail below, the Court grants the Suffolk County defendants' motion in part and denies it in part, and grants M. Weiner's motion in its entirety.

First, the Court grants the Suffolk County defendants' motion for summary judgment on the false arrest claim. Specifically, the Court concludes that Officer McKeefery and Sergeant Maietta had probable cause to arrest plaintiff as a matter of law, based on the information available to them at the time of arrest, including the sworn statement of Jake Weiner, and the interviews of Logan Weiner. In connection with that determination, the Court concludes that no rational jury could find that the circumstances surrounding the incident—including the ages of the child witnesses, and the fact that they were part of an acrimonious divorce between plaintiff and their mother—were sufficient to raise doubt as to the veracity of the statements by the children at the time of the plaintiff's arrest. Similarly, the officers were under no obligation, prior to the arrest, to investigate plaintiff's version of the events, including a recording of the incident that he had made. Even assuming *arguendo* that there was not probable cause to arrest plaintiff, the Court concludes that defendants Officer McKeefery and Sergeant Maietta are entitled to qualified immunity because, under plaintiff's version of the information available to the

police on that date and drawing all reasonable inferences in plaintiff's favor, officers of reasonable competence could disagree over whether there was probable cause to arrest.

Second, the Court denies the Suffolk County defendants' motion for summary judgment on the malicious prosecution claim against Officer McKeefery. The Court finds that a genuine issue of material fact exists regarding whether or not the Officer McKeefery had probable cause to commence and continue the prosecution of plaintiff. In connection with a malicious prosecution claim, police officers may not disregard exculpatory evidence that would void probable cause, and a failure to make reasonable inquiry in such situations may be evidence of a lack of probable cause. In this case, the recording of the incident supplied by plaintiff to police at the time of arrest certainly undermined the version of events provided to the police by the two children. There is a triable issue of fact as to whether a failure to review that recording and conduct further inquiry dissipated the probable cause between the arrest and the initiation of the prosecution. In addition, it is unclear whether Officer McKeefery was aware of a May 2009 finding by Child Protective Services that the children's claims against the plaintiff were unfounded. These factual disputes (and gaps in the record regarding Officer McKeefery's level of ongoing involvement in the prosecution) also preclude summary judgment at this stage on the issue of whether the officer is entitled to qualified immunity for commencing and continuing the prosecution of plaintiff. However, Sergeant Maietta is entitled to summary judgment on this claim because there is no evidence that he initiated or participated in the continuation of the prosecution.

Third, the Court grants the Suffolk County defendants' motion for summary judgment on the plaintiff's *Monell* claim, finding the Suffolk County's "Pro–Arrest Policy" constitutional, because the policy requires probable cause for any arrest arising from a domestic dispute.

Fourth, the Court finds that the plaintiff's claim for declaratory judgment against defendant Spota cannot survive summary judgment, as it does not meet the actual case or controversy requirement.

Finally, the Court grants defendant M. Weiner's motion for summary judgment on the pendent New York state law malicious prosecution claim, because plaintiff's allegations against defendant M. Weiner are conclusory and not supported by sufficient evidence from which a rational jury could find that M. Weiner engaged in an active role in the prosecution, as required under New York state law.

## I. Background

### A. *Factual Background*

The Court takes the following facts from the parties' affidavits, depositions, exhibits, and respective Local Rule 56.1 Statements of Fact.[1] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir.2005).

On April 2, 2009 around 8:19 p.m., plaintiff's twelve-year-old son, Jake Weiner, called 911 requesting police assistance at his mother's (M. Weiner's) residence relat-

---

1. Although the parties' Rule 56.1 statements contain specific citations to the record, the Court cites to the statements rather than to the underlying citations. Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

ing to an incident that occurred between his father (plaintiff) and his brother Logan Weiner, who was eight years old, while plaintiff was driving both sons from the library to M. Weiner's home. (Suffolk County Defs.' Rule 56.1 Statement, ¶¶ 1, 2.) In the call, Jake Weiner told the operator that plaintiff, "[who is] not allowed to touch [Logan], . . . grabbed him and threw him against the wall of the car." (*Id.* ¶ 1.) Plaintiff also called 911. (*Id.*) Suffolk County Police Officers Brandi McGloughlin and David Montemurro, Officer McKeefery, and Sergeant Maietta responded to the call. Upon arrival at M. Weiner's home, Officer Montemurro, Officer McKeefery, and Sergeant Maietta all interviewed Logan and Jake. (*Id.* ¶ 4.) Officer Montemurro interviewed Logan alone and then interviewed Jake alone. (*Id.* ¶ 5.) Officer McKeefery interviewed Jake alone and then interviewed Logan with Officer Montemurro. (*Id.* ¶ 6.)

Jake Weiner provided Officers McKeefery and Montemurro with sworn written statements attesting that, while driving, plaintiff became angry, turned around in the vehicle, grabbed Logan by the front of his shirt, shook him, and threw him across the back seat hitting the door. (*Id.* ¶ 12; Suffolk County Defs.' Exs. B and F.) Jake Weiner executed a sworn Violation Information to that effect and a Suffolk County Police Department Civilian Arrest Form demanding that his father be arrested for the charge of Harassment in the Second Degree. (Suffolk County Defs.' Rule 56.1 Statement ¶ 15; Suffolk County Defs.' Exs. A and D.)

Based on the sworn statements of Jake Weiner and the interviews with Logan Weiner, Officer McKeefery executed a misdemeanor information charging plaintiff with endangering the welfare of a child, in violation of New York State Penal Law Section 260.10.01, and arrested him.

(Suffolk County Defs.' Rule 56.1 Statement ¶ 17.) Suffolk County defendants allege that M. Weiner provided no information that led to the arrest of plaintiff, (*id.* ¶ 18), while plaintiff asserts that the Suffolk County defendants "did not rely exclusively on the interviews of [Logan] and Jake in deciding to arrest and commence the malicious prosecution of plaintiff," but instead relied on information provided by M. Weiner, (Pl.'s Rule 56.1 Statement in Response to Suffolk County Defs.' Statement, ¶ 18.)

While at the scene of the arrest, plaintiff informed Officer McKeefery that he had recorded the incident in the car and repeatedly asked the officer to listen to the tape. (Suffolk County Defs.' Rule 56.1 Statement ¶ 19.) Plaintiff and Suffolk County defendants dispute whether or not Officer McKeefery asked plaintiff if he could authenticate the recording. (*Id.*; Pl.'s Rule 56.1 Statement in Response to Suffolk County Defs.' Statement ¶ 19.) Despite plaintiff's repeated requests, Officer McKeefery and Sergeant Maietta did not listen to the recording. (Suffolk County Defs.' Rule 56.1 Statement ¶ 19; Pl.'s Rule 56.1 Statement in Response to Suffolk County Defs.' Statement ¶ 19.) Plaintiff asserts that the content of the tape revealed that Logan attempted to exit the moving vehicle while plaintiff was driving and that plaintiff grabbed him to protect him from injury. (Compl. ¶ 14; Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J., Ex. 7.)

On April 3, 2009, the day after his arrest, plaintiff was arraigned in state court and the court imposed a five day order of protection directing him to stay away from Jake and Logan Weiner. (Pl.'s Aff. in Opp'n to Suffolk County Defs.' Mot., ¶ 22.) The order of protection was extended indefinitely on April 8, 2009. (*Id.* ¶ 34.) In May 2009, Child Protective Services (CPS)

reviewed the tape and concluded that Logan and Jake Weiner's claims against their father were unfounded. (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J., Ex. 6. (reporting that "[t]here was no time where Mr. Weiner was yelling at the children, appeared to be angry or threatened the children.").) Plaintiff's criminal trial began on September 27, 2010. (Pl.'s Aff. in Opp'n to Suffolk County Defs.' Mot. ¶ 39.) After listening to the plaintiff's recording, the State Court Judge found that "there [was] reasonable doubt as to the intent of Mr. Weiner because it is apparent that the door was probably opening or that the child was getting out of the car." (*Id.*) Consequently, plaintiff was acquitted of both charges on October 14, 2010, (Pl.'s Mem. in Opp'n. to Suffolk County Defs.' Mot. for Summ. J., Ex. 9), and the order of protection was vacated on October 14, 2010, (*id.,* Ex. 16.)

### B. *Procedural Background*

On May 10, 2011, plaintiff brought this action, naming the County of Suffolk, Officer McKeefery, Sergeant Maietta, Spota, and M. Weiner as defendants. Plaintiff alleges that, under 42 U.S.C. § 1983, Officer McKeefery and Sergeant Maietta violated his Fourth and Fourteenth Amendment rights by unlawfully arresting and prosecuting him and depriving him of contact with his children for over a year. (Compl. ¶¶ 35–36.) He also asserts a *Monell* claim against Suffolk County for maintaining an unconstitutional pro-arrest policy in cases involving alleged domestic disputes. (*Id.* ¶ 33.) He also brings a claim against Spota for declaratory relief. Finally, he brings a state law claim for malicious prosecution against defendant M. Weiner. (*Id.* ¶ 37.)

Following discovery, *pro se* defendant M. Weiner moved for summary judgment on July 7, 2014 and the Suffolk County defendants moved for summary judgment on July 10, 2014. The Court held oral argument on the motions on October 28, 2014. The matter is fully submitted.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154 (2d Cir.2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

### III. DISCUSSION

### A. Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff brings claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution against Officer McKeefery and Sergeant Maietta, and a *Monell* claim against the County alleging that the County's "Pro–Arrest Policy" violated the plaintiff's constitutional rights. For the reasons explained below, based on the undisputed facts in this case, the Suffolk County defendants are entitled to summary judgment on the false arrest claim and the *Monell* claim, and the malicious prosecution claim against Sergeant Maietta. However, the Court denies the motion for summary judgment on the malicious prosecution claim against Officer McKeefery.

### 1. Claims for False Arrest and Malicious Prosecution

To state a claim under § 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983 (2006); *see also Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999). Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (citing *Weyant,* 101 F.3d at 852 (false arrest) and *Conway v. Village of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

### a. False Arrest

### i. Applicable Law

The Second Circuit has established that " '[t]he existence of probable cause to arrest constitutes justification and

is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir.2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir.2007)); *see also Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (additional citations omitted)).

■ Furthermore, "[t]he validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F.Supp. 305, 313 (E.D.N.Y.1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Id.* (citing *Creighton*, 483 U.S. at 641, 107 S.Ct. 3034; *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it" (emphasis in original) (quoting *Caldarola*, 298 F.3d at 162)). Moreover, a determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation ..., the knowledge of one is presumed shared by all." *Calamia v. City of N.Y.*, 879 F.2d 1025, 1032 (2d Cir.1989) (internal citations and quotations omitted); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

### ii. Application

■ The Court finds that based on the undisputed facts in this case Officer McKeefery and Sergeant Maietta had sufficient probable cause to arrest the plaintiff. Specifically, plaintiff does not dispute that, when the Suffolk County police officers arrived on scene, Jake Weiner informed them that plaintiff grabbed and shook Logan in the back seat of the car while driving them to their mother's residence. (Compl. ¶ 12; Suffolk County Defs'. Rule 56.1 Statement ¶ 12.) Further, it is undisputed that Jake attested to this version of events in multiple sworn statements to the police, including a sworn Violation and a Suffolk County Police Department Civilian Arrest Form. (Suffolk County Defs.' Rule 56.1 Statement ¶¶ 12–15.) Nonetheless, plaintiff makes a number of arguments to support his claim that police lacked probable cause. However, as explained in detail below, construing the facts available in a light most favorable to plaintiff, the Court finds that he fails to identify any "specific facts showing that there is a *genuine issue for trial*" on the false arrest claim. *Caldarola*, 298 F.3d at 160 (alteration and emphasis in original) (internal quotation marks and citation omitted).

■ First, plaintiff argues that, because Jake Weiner was not a putative victim but instead only an eyewitness to the incident in the car, his sworn statements to the police officers are not sufficient to

establish probable cause. (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 2–5.) However, the Second Circuit has consistently held that probable cause can exist solely based on information from either an alleged victim or an eyewitness—such as Jake Weiner. As the Court articulated in *Betts v. Shearman*:

> [P]robable cause exists if a law enforcement officer "received [ ] information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity. The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors."

751 F.3d 78, 81 (2d Cir.2014) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006)) (internal quotation marks and citations omitted). "[I]nformation provided by 'an identified bystander with no apparent motive to falsify' has 'a peculiar likelihood of accuracy,' " and the Second Circuit has "endorsed the proposition that 'an identified citizen informant is presumed to be reliable.' " *Panetta*, 460 F.3d at 395 (quoting *Caldarola*, 298 F.3d at 163, 165). Furthermore, " '[t]he Supreme Court has recognized [ ] that 'if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—... rigorous scrutiny of the basis of his knowledge [is] unnecessary.' " *Hill v. Marino*, No. 10–CV–5615 (PKC), 2014 WL 4245546, at *5 (E.D.N.Y. Aug. 26, 2014) (quoting *Caldarola*, 298 F.3d at 163 (citing *Gates*, 462 U.S. at 233–34, 103 S.Ct. 2317)) (additional internal quotation marks omitted). The Second Circuit has recognized that when a sworn statement contains an acknowledgment that any false statement made to police would subject the author to criminal penalties, that statement serves as an additional indicia of reliability. *Panetta*, 460 F.3d at 397. As a result, even in

the absence of a statement from the victim, police officer defendants could establish probable cause solely based on information from an eyewitness, like Jake Weiner, unless "circumstances [exist] that raise doubt as to the [eyewitness'] veracity." *Miloslavsky v. AES Engineering Soc., Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir.), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993).

■ As a second line of attack, plaintiff contends that Officer McKeefery and Sergeant Maietta had information at the time of his arrest that undermined Jake Weiner's credibility. Plaintiff argues that the officers should have considered the Weiners' acrimonious divorce in assessing whether Jake was a dependable source. (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 5.) He asserts that the officers should have recognized that Jake had a "motive to lie" given that he had been in his mother's sole "control and custody" for more than two years. (*Id.*) However, there are no facts in the record that suggest that the defendant officers knew (or even should have known) the nature of the Weiners' marital and custody dispute at the time of the arrest. (Dep. of Officer Montemurro at 40.) *See, e.g., Schnitter v. City of Rochester*, 556 Fed.Appx. 5, 9 (2d Cir.2014) ("While the complaint alleges that Schnitter's wife had various attributes that made her an unreliable witness, it alleges no facts suggesting that [the investigator] either knew or should have known of those attributes, or of any other material reason to doubt the veracity of Schnitter's wife's testimony, prior to arrest."). In any event, police officers are permitted to rely upon eyewitness testimony even in the context of a marital dispute. In other words, the fact that a victim may be entangled in a domestic dispute does not, in and of itself, under-

mine the victim's veracity. *See, e.g., United States v. Patane,* 304 F.3d 1013, 1017 (10th Cir.2002) ("We find no basis for the suggestion that domestic violence victims are undeserving of the presumption of veracity accorded other victim-witnesses."); *Rheingold v. Harrison Town Police Dep't,* 568 F.Supp.2d 384, 390 (S.D.N.Y.2008) ("[The officer] could rely on [ex-wife's] complaint because he had no reason at the time to doubt the veracity of her statement that plaintiff violated the order by returning the children at 8:50 p.m. instead of 8:30 p.m.").

In addition, there is also no evidence supporting the plaintiff's assertions that Logan Weiner was uncooperative with police or that he refused to provide a sworn statement, which plaintiff argues should have led police to question Jake's truthfulness. (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 11.) Plaintiff has submitted no evidence suggesting that Logan's statements contradicted or undermined those made by his older brother. In fact, the Suffolk County defendants' 56.1 statement and accompanying depositions attest to the fact that police found both Logan and Jake's interviews consistent, believed they were intelligent and understood the questions asked, deemed them to be truthful and credible, and judged that "their statements were made on their own accord and were not influenced by their mother co-defendant Maryann Weiner." (Suffolk County Defs.' Rule 56.1 Statement, ¶¶ 7–11.) The officers' decision to have Jake, rather than Logan, attest to the information in the sworn Violation Information and the Suffolk County Police Department Civilian Arrest Form certainly does not vitiate the probable cause for the plaintiff's arrest, and the plaintiff's arguments regarding that decision are speculative at best.

Third, plaintiff argues that the Suffolk County police officers' failure to investigate his version of events by reviewing his recording negates any finding of probable cause. It is undisputed that at the time of the arrest, plaintiff informed Officer McKeefery that the incident in the car had been recorded and asked him to listen to the tape. (Suffolk County Defs.' Rule 56.1 Statement ¶¶ 19–20; Pl.'s Rule 56.1 Statement in Response to Suffolk County Defs.' Statement ¶¶ 19–20.) The Suffolk County defendants maintain that Officer McKeefery's decision to not review the tape was "prudent" "due to the issues of verification, and [because] there was no way of authenticating the tape." (Suffolk County Defs.' Rule 56.1 Statement ¶¶ 19–20; Suffolk County Defs.' Mem. in Supp. of Mot. for Summ. J. at 6). Plaintiff contests this, asserting that "at no time prior to his arrest through the arresting process" did the defendants ask him if he had a way of authenticating the tape. (Pl.'s Rule 56.1 Statement in Response to Suffolk County Defs.' Statement ¶¶ 19–20.) [2]

 Generally, a suspect's "denials are insufficient to obviate probable cause." *Castro v. County of Nassau,* 739 F.Supp.2d 153 (E.D.N.Y.2010) (citing *Vangemert v. Strunjo,* No. 08–CV–00700

---

**2.** Though the Court notes that there is an issue of fact regarding whether the police asked plaintiff if he could authenticate the tape, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The Court finds that, even assuming that the defendant officers did not inquire about the authentication of the tape as the plaintiff asserts, the defendants had no obligation to review the tape recording before arresting the plaintiff. However, as noted *infra,* the analysis is different for purposes of a malicious prosecution claim.

(AWT), 2010 WL 1286850, at *5 (D.Conn. Mar. 29, 2010)). The Second Circuit has held that "'[t]he fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause,' and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta,* 460 F.3d at 395–96 (quoting *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985)). Furthermore, in *Curley v. Village of Suffern,* the Second Circuit held that, when an alleged victim of assault told police that the plaintiff was the perpetrator, police had probable cause to arrest, even though the plaintiff had a conflicting account. 268 F.3d 65, 70 (2d Cir.2001). The Second Circuit stated that:

> [O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.

> Although a better procedure may [be] for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove the plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest. Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted.

*Id.* (internal quotation marks and citations omitted). *See also Panetta,* 460 F.3d at 397–98 (finding that an officer, who arrested an individual for animal cruelty based on an informant and peace officer's statements and on his own observations of the animal, was not required to further investigate the horse's age or symptoms or call the horse's veterinarian, as he was "not required to explore and eliminate every theoretically plausible claim of innocence.") (internal quotations marks and citations omitted).

 This Court concludes that Officer McKeefery's decision not to review the tape recording before arresting plaintiff did not constitute a disregard for exculpatory evidence sufficient to eliminate probable cause. At the time of arrest, the officers, relying on the sworn statements of Jake Weiner and on their interviews of Logan Weiner, had "reasonably trustworthy information" that plaintiff endangered the welfare of a minor in violation of New York State Penal Law Section 260.10.1 and engaged in Harassment in the Second Degree in violation of New York State Penal Law Section 240.26.1. *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000). At the arrest stage, Officer McKeefery and Sergeant Maietta had no obligation to investigate plaintiff's version of events in full, and their decision not to review the tape did not vitiate their probable cause for the arrest.[3]

---

**3.** Plaintiff cites an additional factor that he believes curtailed Jake's credibility. He argues that police should inherently question the reliability of any child who "would sign a document demanding his father be arrested." (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 10–11.) He asserts that such a scenario, in and of itself, "would have caused any reasonable police officer to further investigate." (*Id.* at 11.) The Court rejects this frivolous argument. Such an approach would undermine the reliability of all attesting putative child victims in any case involving alleged parental abuse. The fact that a child is reporting abuse or other illegal conduct by his or her own parent certainly does not, in and of itself, raise any doubt as to the child's veracity. Moreover, the mere fact that the witness is a minor does not undermine his or her credibility. Instead, probable cause is undermined only if there is something specific about a particular situation involving a parent and child that places into question the reliability of the child's statement to the police. *See also Easton v. City of Boul-*

In sum, in this case, based on the undisputed facts, the officers had no reason to doubt Jake Weiner's reliability, as it was established through his sworn statements and by the fact that his version of events was consistent with and corroborated by that of his brother Logan. (Suffolk County Defs.' Rule 56.1 Statement ¶¶ 12–13.) Plaintiff has failed to point to any information available to Officer McKeefery or Sergeant Maietta at the time of the arrest that would have undermined Jake Weiner's veracity. Furthermore, the Court does not believe that the police officers had an obligation at the arrest stage to review the plaintiff's tape recording. In sum, given the uncontroverted facts in the record, the Court concludes that Officer McKeefery and Sergeant Maietta had probable cause to arrest plaintiff. Accordingly, the Suffolk County defendants' motion for summary judgment on the false arrest claim is granted.

### b. Malicious Prosecution

#### i. Applicable Law

The Suffolk County defendants also move for summary judgment on the plaintiff's malicious prosecution claim.

For the reasons articulated below, the Court denies this motion. To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir.2009); *Drummond v. Castro*, 522 F.Supp.2d 667, 677–78 (S.D.N.Y.2007). Malicious prosecution claims under § 1983 require that there " 'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Conte v. County of Nassau*, No. 06–CV–4746, 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir.2004)).

#### ii. Application

Here, the first two elements are met with respect to the claim against Officer McKeefery.[4] It is undisputed that a

---

*der, Colo.*, 776 F.2d 1441, 1449 (10th Cir. 1985) ("On appeal, Easton's challenge to the validity of the warrant is primarily directed toward challenging the reliability of the child testimony used by the police. Easton seems to suggest that because Damian was only 5 years and 9 months old and Michael only 3 years and 10 months old, their testimony was somehow suspect to begin with. This is an entirely unacceptable point of view. In a great many child molestation cases, the only available evidence that a crime has been committed is the testimony of children. To discount such testimony from the outset would only serve to discourage children and parents from reporting molestation incidents and to unjustly insulate the perpetrator of such crimes from prosecution."); *Rosen v. Alquist*, Civil Action No. 3:10–CV–01911 (VLB), 2012 WL 6093909, at *11 (D.Conn. Dec. 7, 2012) ("Here, Sergeant Alquist was entitled in his probable cause analysis to rely on the consis-

tent statements made by the alleged [12–year old] victim that [her step-father] Mr. Brown had sexually assaulted her, and on Alquist's interviews with [another parent] and the alleged victim's brother, which corroborated or supplemented the girl's allegations. The record does not indicate that Sergeant Alquist had cause to believe that the alleged victim was not telling the truth, nor does the record indicate that [the other parent] or the alleged victim's brother were untruthful.").

4. Although the malicious prosecution claim proceeds against Officer McKeefery based upon his execution of the misdemeanor information and possession of the recording, the Court grants summary judgment as to Sergeant Maietta on the malicious prosecution claim. There is no evidence in the record that Sergeant Maietta had any involvement in the initiation or continuation of the criminal

criminal proceeding was instituted against plaintiff and that the proceeding terminated in his favor. (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J., Ex. 9.) Thus, only the third and fourth elements are at issue in this case.

As to the third element, "probable cause" for malicious prosecution purposes is assessed " 'in light of facts known or reasonably believed at the time the prosecution was initiated' "—here, at the time of plaintiff's arraignment—and not at the time of arrest. *Drummond,* 522 F.Supp.2d at 678 (quoting *Carson v. Lewis,* 35 F.Supp.2d 250, 263 (E.D.N.Y.1999)); *see also Mejia v. City of New York,* 119 F.Supp.2d 232, 254 (E.D.N.Y.2000) ("[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment)...."). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman,* 721 F.3d 84, 94–95 (2d Cir.2013) (citing *Manganiello v. City of New York,* 612 F.3d 149, 161–62 (2d Cir. 2010)) (additional internal citations and quotation marks omitted).

For malicious prosecution claims, probable cause " 'has ... been described as such facts and circumstances as would lead a reasonable prudent person to believe the plaintiff guilty.' " *Stansbury,* 721 F.3d at 95 (quoting *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir.2003)). In cases where the police had probable cause to arrest, in order to succeed on a malicious prosecution claim a plaintiff must show that " 'authorities became aware of exculpatory evidence between the time of the arrest and subsequent prosecution that would undermine the probable cause which supported the arrest.' " *Nzegwu v. Friedman,* No. 10–CV–2994, 2014 WL 1311428, at *11 (E.D.N.Y. March 31, 2014) (quoting *Johnson v. City of Mount Vernon,* No. 10–CV–70006, 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012)). As the Second Circuit has held,

> Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause.... In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.

*Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996) (internal citations and quotation marks omitted). *See also Drummond,* 522 F.Supp.2d at 678 (where probable cause for arrest existed, the malicious prosecution claims failed, because the defendants were not made aware of any post-arrest intervening facts that would negate probable cause); *Torraco v. Port Auth. of N.Y. & N.J.,* 539 F.Supp.2d 632, 652–53 (E.D.N.Y.2008) (same); *Coyle v. Coyle,* 354 F.Supp.2d 207, 213 (E.D.N.Y. 2005) (same).

Most relevant to this case, probable cause to prosecute not only dissipates when police officers uncover new evidence after an arrest, but in certain cases it can also dissipate when police officers fail to examine evidence already available to them. As one district court put it,

---

prosecution. His signature on the civilian arrest form is insufficient to constitute an initiation of a criminal prosecution. *See, e.g., Rodriguez v. City of New York,* No. 08–CV–04173 (RRM)(RLM), 2012 WL 1059415, at *11 (E.D.N.Y. March 28, 2012) (granting summary judgment on malicious prosecution claim where officers did not sign charging instrument, and no other evidence of involvement in prosecution existed); *Burt v. Aleman,* No. 05–CV–4493 (NGG), 2008 WL 1927371, at *6 (E.D.N.Y. April 30, 2008) (granting summary judgment on malicious prosecution claim where there was no evidence that the detective "insisted upon or urged further prosecution of Plaintiff after his arrest.").

"[p]olice officers may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause." *Korthas v. City of Auburn*, No. 04–CV–537 (NPM)(GHL), 2006 WL 1650709, at *15 (N.D.N.Y. June 9, 2006) (internal citations and quotation marks omitted); *see also Leogrande v. State of New York*, No. 08–CV–3088 (JFB)(ARL), 2013 WL 1283392, at *8 (E.D.N.Y. Mar. 29, 2013). Indeed, as the Second Circuit in *Lowth* stressed, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth*, 82 F.3d at 571 (internal citations and quotation marks omitted). Consequently, even in cases that do not involve new evidence, "[c]ontinued prosecution after facts sufficient to exonerate the accused have been provided may give rise to an action for malicious prosecution under New York law." *Dirienzo v. United States*, 690 F.Supp. 1149, 1157–58 (D.Conn.1988).

██ Here, though the Court has concluded that plaintiff's arrest was supported by probable cause, the factual issue remains whether the commencement and continuation of Weiner's prosecution was similarly supported. *See Crews v. County of Nassau*, No. 06–CV–2610, 2007 WL 4591325, at *9 (E.D.N.Y. Dec. 27, 2007). As discussed above, plaintiff was arrested on April 2, 2009 and on the next day, April 3, 2009, he was arraigned and the order of protection was issued against him. (Pl.'s Aff. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. ¶¶ 22, 34.) The CPS findings were issued the next month. (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 4 and Ex. 6.) Plaintiff's criminal trial began on September 27, 2010 and concluded on October 14, 2010 when the judge, after reviewing the plaintiff's tape recording, acquitted him on both charges and the order of protection-which was in

place for over a year and a half-was vacated. (Pl.'s Aff. in Opp'n to Suffolk County Def. Mot. ¶ 39; Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J., Exs. 9 and 16.)

As the Court has explained, at the time of the arrest, the arresting officers did not have an obligation to review the plaintiff's recording of the incident in the car. However, the remaining question is whether, at some time before the arraignment or even during the early phases of the prosecution, Officer McKeefery had the opportunity to review the recording and, if he did, whether that review vitiated the probable cause from the arrest. Moreover, if Officer McKeefery failed to review the recording after the arrest, there are additional questions as to why he did not review the recording, whether he passed the recording to other individuals (if so, to whom and when), and whether his review of the recording (and any additional investigation from that review) would have vitiated the probable cause for initiating and/or continuing the prosecution.

Having carefully reviewed the record, the Court finds that the record is insufficiently developed to resolve these factual disputes and, as a result, Officer McKeefery is not entitled to summary judgment on this claim. In the Suffolk County Defendants' Memorandum of Law, there is only one paragraph dedicated to the malicious prosecution claim and the only argument is that, because there was probable cause to arrest, there also was probable cause for the prosecution. (Suffolk County Defs.' Mem. in Supp. of Mot. for Summ. J. at 9–10). However, as noted above, the legal analysis is not that simplistic when an officer has exculpatory evidence in his possession, and may have failed to act upon it. The Court has reviewed the plaintiff's recording of the events that occurred on April 2, 2009. Based on that

review, it is clear that Jake's sworn statements are inconsistent with the recording, and that the recording is exculpatory. A rational jury could conclude that, if Officer McKeefery had reviewed the recording, it would have, at a minimum, undermined Jake Weiner's credibility to such an extent that it would have required reasonable inquiry to avoid vitiation of the probable cause.[5]

Given the exculpatory nature of the recording, the record before this Court is surprisingly barren regarding what happened between the arrest and the arraignment, and during the early stages of the prosecution in a number of respects, including, but not limited to: (1) whether or not Officer McKeefery reviewed the plaintiff's recording prior to executing the misdemeanor information (or during the early stages of the prosecution); (2) if he reviewed the recording after the arrest, what additional investigation he did regarding the recording; (3) if he did not review the recording, the reason for not reviewing it;[6] and (4) what, if anything, Officer McKeefery told prosecutors regarding plaintiff's recording (as well as when he told it to them, and when he supplied them with the recording). Although not dispositive to

this motion, the record is also unclear as to whether Officer McKeefery was aware of the CPS findings from May 2009, and, if he was aware, what was done with that information.

▮▮▮▮ The Court recognizes that, under certain circumstances, there may be a break in the causation chain between police and prosecutors sufficient to free police officers from liability on any claim for malicious initiation/continuation of a prosecution. For instance, even if one could conclude that the information in the recording and/or the CPS report would have completely vitiated the probable cause to prosecute if it were reviewed before the plaintiff's arraignment or in the early stages of his prosecution, his claim for malicious continuation of prosecution would still fail against Officer McKeefery if the control of his prosecution passed from the Suffolk County police to the District Attorney after his arraignment and the arresting officers were no longer involved in the case. "In order for there to be liability for malicious *continuation* of the prosecution once control has passed into the hands of the prosecuting attorney the defendant [in this case, the Suffolk County

---

**5.** The Court also notes that, in connection with the state court trial, the judge (having reviewed the recording) stated there was "reasonable doubt as to the intent of Mr. Weiner because it is apparent that the door was probably opening or that the child was getting out of the car." (Pl.'s Aff. in Opp'n. to Suffolk County Defs.' Mot. for Summ. J. ¶ 39.) Although that finding was under the much higher reasonable doubt standard, it is clear that the judge concluded (at a minimum) that Jake Weiner's version of the events was placed into question by the recording.

**6.** In his deposition, Sergeant Maietta explained that it was not prudent to listen to the recording prior to the arrest because its authenticity could not be verified on the spot. *See* Maietta Dep. at 28–29 ("I didn't listen to any tape recording ... For the reasons that

had been articulated earlier today. I mean, I didn't think it was prudent. We couldn't, you know, you know, validate what we might have heard, should we have chosen to listen to it, was factual, whether the voices on it were the parties that we were interacting with, whether it had been edited, whether this had been staged. I mean, there's no way of knowing, you know, *in the field like that*, so I didn't argue with Officer McKeefery's judgment call on that and I concurred with it.") (emphasis added). Although authentication issues could not be resolved immediately at the arrest scene, the Court is aware of no explanation in the record as to why, after the arrest, the recording could not be reviewed and why any authentication issues could not be addressed before initiation/continuation of the prosecution.

officers] ... must be shown to have taken an active part in the proceedings." *Dirienzo*, 690 F.Supp. at 1158. Generally speaking, "once an arrestee is formally charged, the arresting officer is generally no longer responsible for the prosecution, and the chain of causation between the officer's conduct and the claim for malicious prosecution is broken by the intervening independent actions of the court or prosecutor." *Thompson v. Sweet*, 194 F.Supp.2d 97, 102 (N.D.N.Y.2002) (citing *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir.1999)). However, the Suffolk County defendants do not argue this point, nor do they provide any evidence to the Court as to when the control of the prosecution (and the recording) passed from Officer McKeefery to prosecutors.

In sum, even though the Court finds that probable cause existed at the time of plaintiff's arrest, construing the facts available in a light most favorable to plaintiff, there is a genuine issue of fact in the current record regarding whether probable cause continued to exist after the arrest given the information that Officer McKeefery allegedly had in his possession regarding plaintiff's innocence—namely, his recording (and also, potentially, the subsequent CPS findings). *See, e.g., Jones v. City of New York*, 603 Fed.Appx. 13, 15, 2015 WL 895294, at *2 (2d Cir. Mar. 4, 2015) ("On this record, we find that reasonable minds could differ about whether there was a genuine issue of material fact as to whether Rodriguez had probable cause to further detain Jones and initiate the criminal complaint because Rodriguez did not say where and when Faloye (or Gibbs) identified Jones, and neither side undertook, by further questioning at Rodriguez's deposition (or otherwise), to fill this gap."); *Mohr v. City of New York*, No. 12 Civ. 00163(LGS), 2013 WL 5988948, at *7 (S.D.N.Y. Nov. 12, 2013) ("Here there are genuine issues of disputed fact as to whether Defendants had probable cause to prosecute Mohr.... [A]t the time of Mohr's arrest, he told the officers repeatedly that the substance they discovered on him was creatine and not a controlled substance. While officers are not required to investigate every protestation of innocence, ... this fact is still relevant.") (citations omitted); *see also Rae v. County of Suffolk*, 693 F.Supp.2d 217, 227 (E.D.N.Y.2010) ("[T]he question is whether either the evidence gathered after arrest undermined a finding of probable cause, or whether the ... Defendants' inquiry into the alleged [crime] so far departed from what a reasonable person would have undertaken as to itself constitute evidence of lack of probable cause."); *Lawrence v. City Cadillac*, No. 10 Civ. 3324, 2010 WL 5174209, at *6 (S.D.N.Y. Dec. 9, 2010) ("[D]efendants are not obliged to exonerate [the] plaintiff or uncover exculpatory evidence, but the 'failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'") (quoting *Lowth*, 82 F.3d at 571).

As to the fourth element, because there is a factual dispute as to whether plaintiff's prosecution was based on probable cause, the Court is also unable to determine whether Officer McKeefery acted with actual malice—the fourth element of malicious prosecution. "In most cases, the lack of probable cause—while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State of New York*, 74 A.D.2d 998, 999, 427 N.Y.S.2d 330 (N.Y.App.Div. 4th Dep't 1980)); *see Cunninham v. New York City*, No. 04–CV–10232 (LBS), 2007 WL 2743580, at *6 (S.D.N.Y. Sept. 18, 2007); *Mesiti v. Wegman*, 307 A.D.2d 339, 341, 763 N.Y.S.2d 67

(N.Y.App.Div. 2d Dep't 2003) ("[T]he jury was able to 'infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.'") (quoting *Martin v. City of Albany,* 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (N.Y.1977)). Here, because the existence of probable cause to prosecute remains in question, the existence of actual malice does as well.

In sum, given these disputed issues of fact, the Court denies summary judgment on the malicious prosecution claim against Officer McKeefery.

### c. Qualified Immunity

Even assuming *arguendo* Officer McKeefery and Sergeant Maietta lacked probable cause to arrest the plaintiff and the arrest violated plaintiff's rights under the Fourth and Fourteenth Amendments, the arresting officers would still be entitled to summary judgment on qualified immunity grounds. As set forth below, taking plaintiff's version of the information available to the police that day as true and drawing all reasonable inferences in plaintiff's favor, officers of reasonable competence could disagree on whether the probable cause for arrest existed. Thus, qualified immunity is warranted on the false arrest claim.

However, on the malicious prosecution claim, under the totality of the circumstances, the Court is unable to determine as a matter of law, at this juncture, whether Officer McKeefery is entitled to qualified immunity because, as discussed *supra,* there are genuine issues of disputed fact regarding what he did, after the arrest, with potentially exculpatory information in his possession. These disputed issues of fact preclude a determination, at the summary judgment stage, as to whether it was objectively reasonable in these circumstances for Officer McKeefery to believe

probable cause existed to commence and continue plaintiff's prosecution.

### i. Applicable Law

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith,* 439 F.3d 137, 147 (2d Cir.2006) (quoting *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999)). Thus, qualified immunity is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Relevant to this case, an arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) "his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," or (b) it was objectively reasonable for the officer to believe that probable cause existed. *Betts,* 751 F.3d at 82. The issue of "reasonableness" for purposes of probable cause is distinct from the issue of "reasonableness" for purposes of qualified immunity. *See Kerman v. City of N.Y.,* 374 F.3d 93, 116 (2d Cir.2004); *see also Creighton,* 483 U.S. at 641, 107 S.Ct. 3034 ("It simply does not follow immediately

from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [the] search was objectively legally unreasonable."). In *Creighton*, the Supreme Court held that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." 483 U.S. at 641, 107 S.Ct. 3034.

The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir.2001) (internal quotation marks and citations omitted) (emphasis in original). Moreover, under this standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show ... that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan*, 439 F.3d at 147–48 (quoting *Robison v. Via*, 821 F.2d 913, 921

(2d Cir.1987)); *see also Jenkins*, 478 F.3d at 87.

ii. Application to the False Arrest Claim

For the same reasons that the Court concludes that probable cause existed to arrest plaintiff, the Court also finds that Officer McKeefery and Sergeant Maietta, at the very least, had arguable probable cause to arrest plaintiff, especially since "[q]ualified immunity protects from personal liability under § 1983 officers who make reasonable judgment calls under the circumstances—particularly when, as here, the officer is put in the middle of a heated and potentially volatile familial dispute." *Carthew v. County of Suffolk*, 709 F.Supp.2d 188, 203 (E.D.N.Y. 2010); *see, e.g., Mistretta v. Prokesch*, 5 F.Supp.2d 128, 136 (E.D.N.Y.1998) (stating "[t]he doctrine of qualified immunity protects office[r]s who err on the side of removing one of the prospective combatants from the scene"). *See generally Lee v. Sandberg*, 136 F.3d 94, 104 (2d Cir. 1997) ("In sum, given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations, and the presence of factors here that suggest that [alleged victim's] statements were not incredible, we hold that as a matter of law, the State Troopers' actions were objectively reasonable.") As Judge Cogan explained in a § 1983 action in which he granted summary judgment in favor of New York City police officers who arrested a plaintiff involved in a domestic dispute for allegedly violating orders of protection:

Police officers in this situation are in a delicate position that is reflected in the standard for probable cause. If an officer accepts the view of the complaining witness, he may find himself a defendant in an action like this. But it can be worse. If the officer determines to reject the complainant's view and the de-

fendant who is the subject of the Order of Protection commits an act of violence against that complainant—and there are reported instances in which the failure to enforce led to horrific consequences—the officer may find himself sued for not taking aggressive enough action in enforcing the Order.

*Little v. P.O. Massari,* 526 F.Supp.2d 371, 377 (E.D.N.Y.2007) (internal citations omitted); *see also Reynolds v. Jamison,* 488 F.3d 756, 768–69 (7th Cir.2007) ("Law enforcement officers often encounter competing and inconsistent stories. If officers were required to determine exactly where the truth lies before acting, the job of policing would be very risky financially as well as physically. Police would respond by disbelieving witnesses (or not acting on allegations) lest they end up paying damages, and the public would suffer as law enforcement declined." (quotations and citation omitted)).

Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'—those who are not worthy of the mantle of the office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno,* 505 F.3d 203, 214 (2d Cir.2007) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Here, there is no evidence that the Suffolk County officers' conduct in arresting plaintiff was plainly incompetent or that they engaged in a knowing violation of the law, and, thus, Officer McKeefery and Sergeant Maietta are entitled to qualified immunity on the false arrest claim. As noted earlier, it is undisputed that, before arresting plaintiff, the officers interviewed both Logan and Jake Weiner, found their statements consistent and corroboratory, and received sworn statements from eyewitness Jake Weiner declaring that plaintiff shook Logan Weiner in the back seat of the car and injured him. In addition, there is no evidence provided that would indicate at the time of the arrest that the police should have had reason to question the veracity of either Logan or Jake Weiner. Moreover, for reasons already discussed, they were under no obligation to review the recording supplied by plaintiff prior to his arrest.

On this record, even drawing all reasonable inferences in the plaintiff's favor, the officers "could have reasonably believed that probable cause existed" to arrest plaintiff. *Cerrone,* 246 F.3d at 203. Therefore, at a minimum, defendants Officer McKeefery and Sergeant Maietta are entitled to the defense of qualified immunity as to the false arrest claim.[7]

Accordingly, even assuming *arguendo* that probable cause to arrest was lacking, Officer McKeefery and Sergeant Maietta

---

**7.** This Court's decision is consistent with numerous other courts, which have found, under analogous circumstances that qualified immunity existed for arrests arising out of alleged domestic disputes based upon information provided by a complainant. *See, e.g., Read v. Town of Suffern Police Dep't,* No. 10 Civ. 9042(JPO), 2013 WL 3193413, at *5 (S.D.N.Y. June 25, 2013) (finding qualified immunity for false arrest claim based on statements of alleged victim in a domestic dispute, who claimed that plaintiff had threatened her and violated an order of protection, and based on "reasonably trustworthy information" that a protective order was in place); *Carthew v. County of Suffolk,* 709 F.Supp.2d 188, 203 (E.D.N.Y.2010) (holding that officers had qualified immunity in making the arrest for violation of the order of protection based on the statement of the complainant); *Rae v. County of Suffolk,* 693 F.Supp.2d 217, 225–26 (E.D.N.Y.2010) (same); *Dudley v. Torres,* No. 05–CV–1729 (RJD)(LB), 2008 WL 2149603, *5–6 (E.D.N.Y. May 21, 2008) (same); *Welch v. City of New York,* No. 95–CIV–8953(RPP), 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997) (same); *see also Martin v. Russell,* 563 F.3d 683, 686 (8th Cir.2009) (same).

are entitled to summary judgment on qualified immunity grounds, because they had arguable probable cause to arrest plaintiff.

### iii. Application to Malicious Prosecution Claim

■ As explained above, the Court has concluded that disputed issues of material fact exist in connection with whether Officer McKeefery had probable cause to commence and continue the prosecution of plaintiff. These same disputed facts preclude a determination as to whether arguable probable cause existed for purposes of qualified immunity. Absent additional information about what the officer knew about the recording, and what the officer did with the recording, the Court cannot properly assess whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer[s] in question *could* have reasonably believed that probable cause existed." *Cerrone,* 246 F.3d at 203 (quotations and citations omitted) (emphasis in original).

Judge Irizarry dealt with a similar question concerning the obligation to review evidence already in police possession in *Carbajal v. Village of Hempstead,* which also involved a § 1983 claim for false arrest and malicious prosecution. *Carbajal,* No. 02–CV–4270, 2006 WL 845384 (E.D.N.Y. March 29, 2006). In *Carbajal,* the Court considered whether police defendants, who arrested the plaintiff after mistakenly identifying him as an individual involved in a narcotics transaction which was videotaped and observed by police, were entitled to summary judgment on qualified immunity grounds. The videotaped drug sale occurred entirely in Spanish and police never transcribed or translated it before arresting the plaintiff six months later. The crucial question the Court grappled with was whether the defendant police officers had a duty to translate and transcribe the videotape before

arresting him, which plaintiff argued would have revealed the police's error and exonerated him.

After reviewing all the facts available, Judge Irizarry concluded that a genuine issue of material fact existed regarding whether it was objectively unreasonable for police defendants to fail to undertake further investigation to identify the proper suspect by translating the videotape dialogue. *Id.* at *5. The Court found that, particularly because the case involved a claim of malicious prosecution, "a jury could find that no reasonably competent police officer would have proceeded to arrest plaintiff—not in an emergency situation but several months later—without knowing the contents of the videotape dialogue or obtaining a positive identification." *Id.* Further, a " 'reasonable trier of fact could find that the defendant's actions were objectively unreasonable.' *See Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995)." *Id.* Based on this analysis, Judge Irizarry denied summary judgment and determined that the matter should be submitted to a jury. *Id.*

In sum, given the disputed factual issues in the record (and gaps in the record concerning certain facts), the Court is unable to determine as a matter of law, at the summary judgment stage, that Officer McKeefery is entitled to qualified immunity on the malicious prosecution claim.

### 2. *Monell* Claim

Plaintiff also asserts a Section 1983 claim against Suffolk County for promulgating a "Pro–Arrest Policy" for alleged domestic disputes, which he asserts is "unconstitutional because it mandates or puts irresistible pressures on police personnel to arrest without probable cause." (Pl. Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 17.) Plaintiff argues that "[t]he inevitable effect of and perhaps the purpose of the pro-arrest policy is to

cause police to define probable cause differently when domestic violence is alleged." *Id.* As set forth below, the Court concludes that the *Monell* claim cannot survive summary judgment.

As a threshold matter, the municipal liability claim against the County is premised on the alleged unconstitutional arrest of plaintiff without probable cause. Since the Court has already concluded that probable cause existed for the arrest, the County cannot be held liable for the false arrest under *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). In any event, in the alternative, the Court holds that the *Monell* claim cannot survive summary judgment because there is a complete lack of evidence to support that claim.

 Under *Monell*, a municipal entity may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. at 694–95, 98 S.Ct. 2018; *Patterson*, 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) and *Monell*, 436 U.S. at 692–94, 98 S.Ct. 2018). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375

F.3d at 226 (quoting *Kern*, 93 F.3d at 44). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.

Here, it is not disputed that Suffolk County maintains a "Pro–Arrest Policy" in situations involving certain domestic disturbances. (*See* Suffolk County Defs.' Mem. in Supp. of Mot. for Summ. J. at 10; Pl.'s Letter to the Court, dated October 29, 2014, containing Suffolk County Police Department's Department Directive, "Family Complaints/Domestic Incidents Occurring within the Family Unit," Order Numbers 08–48, 08–58, 08–72.) The "Pro–Arrest Policy" requires police responding to a domestic incident to interview the complainant in private "to determine if there exists probable cause to believe that an offense . . . has been committed." (*Id.* at 4.) If the officer concludes that "probable cause [exists] to believe that a felony has been committed, the suspect *must* be arrested even if the complainant requests otherwise." (*Id.* at 5 (emphasis in the original).) If the officer concludes that "probable cause exists [to believe] that a misdemeanor involving physical violence or threat of physical violence has occurred," then an arrest must be made, even if the complainant does not seek an arrest. (*Id.* at 5.)

 For both misdemeanors and felonies, the "Pro–Arrest Policy" mandates arrest only after an officer has determined that probable cause exists. As the Suffolk County defendants point out, "[i]t cannot be argued that a policy or procedure that is reliant upon the existence of probable cause can be the cause of a constitutional violation." (Suffolk County Defs.' Reply Mem. in Supp. of Mot. for Summ. J. at 10.) The Court agrees. A *Monell* claim can only succeed if a plaintiff can "prove that

the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985). Given that the Suffolk County "Pro–Arrest Policy" requires a finding of probable cause before an arrest can be effectuated under the policy, it is certainly constitutional on its face. Although plaintiff argues that the policy only has "lip service reference to the probable cause standard," (Pl.'s Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 15), plaintiff has submitted no evidence to suggest that, notwithstanding the probable cause requirement, there is a practice or custom to implement this policy in an unconstitutional manner. In the complete absence of such evidence, the *Monell* claim cannot survive summary judgment.

Accordingly, the Court grants the Suffolk County defendants' motion for summary judgment as to plaintiff's *Monell* claim.

### B. Declaratory Judgment Against District Attorney Spota

Plaintiff also seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that District Attorney Spota "is duty bound, personally and through his agents, to assess and take appropriate action when he is advised of the existence of exculpatory evidence." [8]

(Compl. ¶ 39.) The Suffolk County Defendants move for summary judgment on this claim arguing that no "actual controversy" exists. (Suffolk County Defs.' Mem. in Supp. of Mot. for Summ. J. at 12.) As set forth below, the Court agrees with the Suffolk County defendants and grants summary judgment on this claim.

#### 1. Legal Standard

■■■ The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "[i]n a case of actual controversy within its jurisdiction ... may declare the rights and other legal relations of any interested party seeking such declaration." "The decision to grant declaratory relief rests in the sound discretion of the district court." *Lijoi v. Continental Cas. Co.*, 414 F.Supp.2d 228, 247 (E.D.N.Y.2006). That discretion is informed by two primary considerations: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether it would finalize the controversy and offer relief from uncertainty. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir.2003); *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969).

■■■ The party seeking a declaratory judgment bears the burden of demonstrating that the district court has jurisdiction—that is, that there is an "actual

---

8. The Court notes that, in the complaint, plaintiff seeks relief in the form of a declaratory judgment that District Attorney Spota has an obligation to review and appropriately act upon exculpatory information. (Compl. ¶ 39.) However, in his opposition papers, plaintiff instead requests the Court to provide declaratory judgment clarifying the standard for probable cause in light of the Suffolk County "Pro–Arrest Policy." (Pl. Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 17.) Below, the Court focuses on the relief sought in the complaint—that is, a declaration regarding exculpatory informa-

tion. However, any claim for declaratory judgment seeking clarification of the standard for probable cause in light of the Suffolk County "Pro–Arrest Policy" would also fail for two reasons. First, given that the *Monell* claim regarding the "Pro–Arrest Policy" fails (for the reasons discussed *supra*), there is no basis for a declaratory judgment addressing that policy. Second, the Court concludes no declaratory judgment would be warranted on that issue, in any event, because such a declaration would not be seeking an actual controversy, but a hypothetical state of facts.

controversy," 28 U.S.C. § 2201(a), defined as one that is "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir.2001) (internal citation and quotation marks omitted); *see also Georgia–Pacific Consumer Prods., LP v. Int'l Paper Co.*, 566 F.Supp.2d 246, 255 (S.D.N.Y.2008). In a declaratory judgment action, "[t]he standard for ripeness . . . is that 'there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir.2005) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). Courts "cannot adjudicate conjectural or hypothetical cases or controversies. A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future." *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F.Supp.2d 348, 352 (E.D.N.Y.2006) (internal citations omitted).

■ "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir.1991). "Several courts have acknowledged the difficulty of line-drawing between those cases in which a controversy is of a hypothetical or speculative nature, and those that present issues of 'sufficient immediacy and reality' to warrant declaratory relief." *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 07 Civ. 0187(JFB)(JO), 2007 WL 2288046, at *7 (E.D.N.Y. Aug. 8, 2007) (quoting *Duane Reade, Inc.*, 411 F.3d at 388); *see also*

*Reichhold Chems., Inc. v. Travelers Ins. Co.*, 544 F.Supp. 645, 650 (E.D.Mich.1982) ("The difference between an abstract question and a controversy contemplated by the Declaratory Judgment Act is necessarily one of degree and, as such, it is extremely difficult to fashion a precise test for determining the existence, or non-existence, of an actual controversy in every fact situation.").

### 2. Application

■ With respect to this motion, the Court finds that the instant matter does not present an "actual controversy" that is ripe for adjudication before this Court by means of a declaratory judgment. While the Court does not deny the existence of a valid conflict between the parties in the case as it relates to the malicious prosecution claim—specifically, the obligation of the defendants to review potentially exculpatory evidence before commencing and continuing the plaintiff's prosecution—it nevertheless finds that this is not an appropriate dispute for resolution by declaratory judgment.

In the instant case, the broad and imprecise nature of the remedy requested—namely a declaration that prosecutors have an obligation to review exculpatory evidence (or, as the Suffolk County defendants put it, "a declaratory judgment requiring the District Attorney of Suffolk County to fulfill his obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)")—does not serve any purpose in clarifying or resolving the legal issues at stake. (Suffolk County Defs.' Mem. in Supp. of Mot. for Summ. J. at 14.) Furthermore, because plaintiff has already been acquitted of the charges at issue, he does not face any actual harm in the absence of such a judgment, and fails to demonstrate that there exists between the parties a "substantial controversy" of

"sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.,* 312 U.S. at 273, 61 S.Ct. 510. Plaintiff argues that he and other similarly situated would "face significant future harm should the declaratory relief he seeks be denied" and specifically asserts that an "actual controversy" exists because his "ongoing matrimonial dispute" is "being addressed by no less than three (3) Courts." (Pl. Mem. in Opp'n to Suffolk County Defs.' Mot. for Summ. J. at 17–18.) He stresses that, in the absence of a declaration from the Court, it "is a virtual certainty that the opportunity for abuse presented by the Suffolk County's Pro–Arrest Policy will be seized upon" again in the future. (*Id.* at 18.)

Because the consequences feared by plaintiff are speculative and because "[a] controversy cannot be a mere possibility or probability that a person may be adversely effected in the future," the Court concludes that an "actual controversy" does not exist and that the declaratory relief requested is not within the purposes of the Declaratory Judgment Act. *U.S. Underwriters Ins. Co.,* 443 F.Supp.2d at 352. As a result, the Court grants summary judgment on this claim.

### C. Pendent State Law Claim Against Defendant M. Weiner

Plaintiff also brings a malicious prosecution claim under New York State law against *pro se* defendant M. Weiner. (Compl. ¶ 37.) Plaintiff claims that defendant M. Weiner's "malicious conduct included persistently urging the County District Attorney to vigorously prosecute plaintiff." (*Id.* ¶ 20.) *Pro se* defendant M. Weiner moves for summary judgment. For the reasons set forth below, the Court concludes that plaintiff has failed to put forth any evidence supporting his allegations that M. Weiner influenced Jake and

the police, or demonstrating that she contributed in any way to the officers' decision to arrest and prosecute plaintiff. Accordingly, summary judgment on this claim is granted in defendant M. Weiner's favor.

#### 1. Applicable Law

 "The elements of ... malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." *Daly v. Ragona,* No. 11–CV–3836 (JFB)(WDW), 2013 WL 3428185, at *6 (E.D.N.Y. July 9, 2013) (quoting *Boyd,* 336 F.3d at 75 (quoting *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992))). As mentioned above, to succeed on a malicious prosecution claim under § 1983 or under state law, a plaintiff must show that (1) the defendant initiated or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice. *Droz,* 580 F.3d at 109; *Drummond,* 522 F.Supp.2d at 677–78 (S.D.N.Y.2007); *Grucci v. Grucci,* 20 N.Y.3d 893, 895–96, 957 N.Y.S.2d 652, 981 N.E.2d 248 (2012).

 New York State Courts have opined that "[i]n order for a civilian complainant to be considered to have initiated a criminal proceeding, 'it must be shown that [the complainant] played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Barrett v. Watkins,* 82 A.D.3d 1569, 1572, 919 N.Y.S.2d 569 (N.Y.App.Div. 3d Dep't 2011) (quoting *Viza v. Town of Greece,* 94 A.D.2d 965, 966, 463 N.Y.S.2d 970 (N.Y.App.Div. 4th Dep't 1983)). Importantly, "[m]erely furnishing information to law enforcement authorities, who are then free to exercise their own judgment as to whether criminal charges should be filed, and giving testimony at a subsequent trial are insufficient to establish liability." *Barrett,* 82 A.D.3d

at 1572, 919 N.Y.S.2d 569. However, a civilian complainant can be held liable for malicious prosecution if she "intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution." *Brown v. Nassau County*, 306 A.D.2d 303, 760 N.Y.S.2d 655 (N.Y.App. Div. 2d Dep't 2003).

### 2. Application

In evaluating defendant M. Weiner's motion for summary judgment, the Court is required to view all evidence in a light most favorable to plaintiff and draw all reasonable inferences in his favor. *Amnesty Am.*, 361 F.3d at 122. That said, plaintiff is required to produce "specific facts showing that there is a *genuine issue for trial.*'" *Caldarola*, 298 F.3d at 160 (alteration and emphasis in original) (quoting *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348). In this case, the Court finds that plaintiff fails to meet his burden to set forth "concrete particulars" and that he relies on nothing more than conclusory allegations to support his claim that M. Weiner was responsible for maliciously initiating and continuing his prosecution. *R.G. Grp., Inc.*, 751 F.2d at 77 (quoting *Research Automation Corp.*, 585 F.2d at 33).

Plaintiff asserts that defendant M. Weiner called "9–1–1 (Suffolk County Police) on April 2, 2009, and the ensuing discussion . . . was filled with false statements and allegations against plaintiff made by defendant Weiner." (Pl.'s Rule 56.1 Statement in Opp'n to Def. M. Weiner's Mot. for Summ. J. ¶ 2.) Though defendant M. Weiner contests this and says she did not call the police, even assuming she did, New York law makes clear (as noted above) that the furnishing information to the police is insufficient to form the basis of a malicious prosecution claim against a private actor, when the police are exercising their own independent judgment as to whether to initiate a criminal prosecution. *See Barrett*, 82 A.D.3d at 1572, 919 N.Y.S.2d 569. Here, the evidence is uncontroverted that the decision to arrest and prosecute plaintiff was the product of the independent judgment of the police based upon their interviews of the Weiner children. As discussed *supra*, it was the children's statements that led to plaintiff's arrest and prosecution. There is also no evidence of M. Weiner's ongoing encouragement of the prosecution after its initiation.

Plaintiff makes a number of claims that defendant M. Weiner forced the children to make fraudulent claims against him, without citing to any tangible evidence to support such actions. For instance, he asserts that Jake Weiner "signed documents while functioning as defendant Weiner's cat's paw" and that "[t]he initial plan that [Logan] . . . act as defendant Weiner's stooge, was abandoned and defendant Weiner required the 12 year old to replace him as her puppet." (Pl.'s Rule 56.1 Statement in Opp'n to Def. M. Weiner's Mot. for Summ. J. ¶ 2.) Plaintiff further alleges that Jake's call to police was "preplanned by defendant Weiner to complicate visitation and parenting rights which had shortly before been granted to plaintiff by state court." (*Id.*) Plaintiff also asserts that defendant M. Weiner "affixed" Jake Weiner's signature to the Civilian Arrest Form and that it "is obvious that the 12 year old Jake Weiner . . . did not independently decide to sign documents." (*Id.* ¶ 4.) However, for all of these conclusions plaintiff fails to cite to any concrete particulars or supporting evidence, and, consequently, the Court views them as speculative and conclusory allegations that are insufficient to survive a summary judgment motion. *R.G. Grp., Inc.*, 751 F.2d at 77; *BellSouth Telecomms.*,

*Inc.,* 77 F.3d at 615 (quoting *Research Automation Corp.,* 585 F.2d at 33). Accordingly, defendant M. Weiner's motion for summary judgment is granted.

IV. CONCLUSION

For the foregoing reasons, Suffolk County defendants' motion for summary judgment is granted with respect to the false arrest claims, the malicious prosecution claim against Sergeant Maietta, the *Monell* claim, and the claim for declaratory judgment against District Attorney Spota. The Suffolk County defendants' motion for summary judgment on the malicious prosecution claim against Officer McKeefery is denied. Defendant M. Weiner's motion for summary judgment on the pendent state law claim for malicious prosecution is granted.

SO ORDERED.